CHATTANOOGA PHARMACEUTICAL ASS'N., an unincorporated, non-profit organization, by Mr. Charles Armstrong, President, Petitioner-Appellee,

v.

UNITED STATES DEPT. OF JUSTICE, Antitrust Division, Lewis Bernstein, Homer W. Hanscom and Howard B. Rockman, Attorneys, United States Dept. of Justice, Washington, D. C. as Custodians or Deputy-Custodians, Respondents-Appellants.

No. 16214.

United States Court of Appeals
Sixth Circuit.

April 20, 1966.

Irwin A. Seibel, Department of Justice, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Robert B. Hummell, Attorney, Department of Justice, Washington, D. C., on brief, for appellants.

Sizer Chambliss, Chattanooga, Tenn., William R. Weeks, II, Chattanooga, Tenn., on brief; Wagner, Weeks & Nelson, Chattanooga, Tenn., of counsel, for appellee.

Before O'SULLIVAN, Circuit Judge, and McALLISTER and CECIL, Senior Circuit Judges.

PER CURIAM.

This is an appeal by the United States Department of Justice and its representatives from a District Court order setting aside a Civil Investigative Demand made upon the petitioner-appellee, Chattanooga Pharmaceutical Association. The Demand was issued pursuant to the Antitrust Civil Process Act, Title 15 U.S.C. §§ 1311–1314.

Appellee is an unincorporated association of retail druggists of Chattanooga, Tennessee, which, it may be assumed had, prior to the Demand, been engaged in activities directed toward enforcing Fair Trade agreements made pursuant to Tennessee's Fair Trade Law. The Demand required that the Association produce and make available for inspection described documents, and that it supply various items of information relevant to the activities of the Association in its efforts to enforce obedience to the Fair Trade Law by retail druggists of Chattanooga. While the Demand sought gen-

eral information concerning "price fixing of drug products and other drug store items," a fair reading of it makes clear that it was directed at investigation of the Association's effort to prevent violations of the Fair Trade Law. It specifically sought information concerning a lawsuit then pending against a large "cut-rate" chain drug company.

By § 1312(a) of the Act, it is provided that whenever the Antitrust Division of the Department of Justice *"has reason to believe* that any person *under investigation* may be in possession * * * of any documentary material relevant to a *civil antitrust investigation,"* (Emphasis supplied) there may be issued a demand such as that here involved. Subsection (b) of § 1312 provides,

"(b) Each such demand shall—

(1) state the nature of the conduct constituting *the alleged antitrust violation* which is under investigation and the provision of law applicable thereto." (Emphasis supplied.)

The Demand's averments as to its justification were that it had been issued pursuant to the Antitrust Civil Process Act "in the course of an inquiry for the purpose of ascertaining whether there is or has been a violation of the provisions of Title 15, United States Code, Sec. 1," [the Sherman Act] by the aforementioned activities of the Association.

Section 1314 of the Act provides for enforcement of the Demand by petition to an appropriate District Court of the United States, and in subsection (b) provides that the person served with the Demand may petition for the setting aside of such Demand, based upon "any failure of such demand to comply with the provisions of this chapter, or upon any constitutional or other legal right or privilege of such person."

The appellee Association did not comply with the Demand, but made timely application to have it set aside by a petition to the District Court. This petition, *inter alia,* charged that the relevant sections of the Antitrust Civil Process Act are unconstitutional, and further that

the activities of the Association were exempt from the Sherman Act by virtue of the Miller-Tydings Act, 15 U.S.C. § 1 and the McGuire Act, 15 U.S.C. § 45(a) (2), which generally exclude from antitrust proscription contracts made under state Fair Trade Laws. The Department of Justice, in the District Court and here, contended that the Miller-Tydings Act and the McGuire Act do not protect the the charged activities of the Association because each excludes from the exemptions granted, price fixing agreements "between retailers, or between persons * * * in competition with each other." 15 U.S.C. § 1 and § 45(a) (5). The District Judge set aside the Demand upon his view that, "The method by which druggists might undertake to make other druggists abide by the law is a state problem and not a federal violation" and

"this controversy among the druggists in Chattanooga relative to such minimum or stipulated prices is an internal situation under the Tennessee law as permitted by the Miller-Tydings Act and the McGuire Act about which the federal government has no right of investigation to bring a civil or criminal action for violation of Section 1, 15 U.S.C.A."

Our disposition of this appeal makes it unnecessary to test the validity of the quoted observations of the District Judge. We affirm his order for the following reasons.

The petition of the appellee Association contained the following further allegations,

"Your petitioner and its membership is made up of small independent, neighborhood druggists that serve the public, not only as retail merchants but as pharmacists dispensing medicines according to the needs of their customers and in conjunction with the convenience of their customers and the medical profession for the alleviation of the illnesses and sicknesses and emergencies of the general public as a whole. They are bound by the Tennessee law the same as all large chains, cut-rate merchants with whom they are forced

to compete. Whatever acts they have done that are referred to directly or indirectly in said Investigative Demand had been for the purpose of protecting their interests granted under the Tennessee Fair Trade Act and exempt from all Antitrust Legislation by the Federal Acts. *Your petitioner alleges and charges that the said Civil Investigative Demand was instigated and solicited by a large, cut-rate chain drug company whose very existence relies on large volume sales and customer attractions by violating all Fair Trade Acts and selling below costs and other customer attraction schemes with minimum pay for their employees rather than personal service to the public. Said Investigative Demand is a plan to utilize the full forces of the United States Government and the Department of Justice to intimidate, harrass and under duress force four members of your petitioner to drop a suit now pending in this Honorable Court for the enforcement of the Tennessee Fair Trade Act, all as reflected in said Civil Investigative Demand under Schedule of Documents, Item 13K."* (Emphasis supplied.)

▆▆▆ The appellant Department of Justice filed a response to the petition which in no way denied or traversed the quoted allegations of the Association's petition. With the pleadings in this state, a hearing in the nature of a pretrial was had. The Court's pretrial memorandum contains the following:

"The government contended that the petition presented only questions of law, contending that the Court could *infer from the civil demand that the Attorney General had reason to issue it.* The Court pointed out that if the petition had specifically denied the Attorney General had reason or had alleged that he acted capriciously and fraudulently, this would clearly present a factual question and the Court suggested that the government therefore file an appropriate motion supported by an appropriate affidavit in this respect setting forth the facts as the gov-

ernment contended them to be. (Emphasis supplied.)

"It was agreed (1) that the government would file within ten (10) days an affidavit setting forth the facts with reference to the Attorney General's reasons for issuing the civil demand; * * *"

The Department of Justice, however, failed to file the affidavit or other response called for by the pretrial memorandum. Neither did it then make, nor had it in the demand itself made, any averment that the Association was "a person under investigation" or that it had "reason to believe" that the Association had documents or information "relevant to a civil antitrust investigation." See § 1312(a) of the Act quoted above. It may be that, absent the direct and serious charges as to its real purpose, the Demand's language that it was made "in the course of an inquiry for the purpose of ascertaining whether there is or has been a violation" would be sufficient. However, in lieu of the called for response, the Department filed a memorandum containing the following:

"At the oral hearing [pretrial] the Court suggested that the impasse in procedure could be avoided if counsel for the United States submitted an affidavit and moved for Summary Judgment. We concurred in that approach at the time, because it appeared to be the most expeditious way of resolving the matter. However, upon further reflection not only may this fail to resolve the issues in the present case, but more important *it would create a precedent which might seriously prejudice future administration of the Civil Investigative Demand statute."* (Emphasis supplied.)

Its memorandum further asserted various reasons why it chose not to respond to the charges of the Association's petition. We are not persuaded that a simple denial and, if necessary, proof contradictory of, the misuse of process charged to the Department would "create a precedent which might seriously prejudice future adminis-

tration of the Civil Investigative Demand statute." We consider, then, that these charges were appropriate pleading and there having been no response, they stood admitted. Thus, the matter was submitted to the District Judge and to us with the concession that, "Said investigative Demand is a plan to utilize the full forces of the United States Government and the Department of Justice to intimidate, harrass and under duress force four members of your petitioner to drop a suit now pending in this Honorable Court for the enforcement of the Tennessee Fair Trade Act, all as reflected in said Civil Investigative Demand under Schedule of Documents, Item 13k."

It seems plain to us that Congress did not intend, nor should the Courts permit, a use of the salutary provisions of the Antitrust Civil Process for the purpose conceded by the pleadings in this case. We consider that under the broad powers of 28 U.S.C. § 2106, it is appropriate that we affirm the setting aside of the Investigative Demand.

Affirmed.