BEECHWOOD GARDENS TENANTS' ASSOCIATION ET AL.
*v.* DEPARTMENT OF HOUSING ET AL.
(13860)

SHEA, GLASS, COVELLO, HULL and SANTANIELLO, JS.

Argued January 30—decision released April 10, 1990

*James J. Perito,* with whom was *Michael Susman,* for the appellants (defendant Beechwood Gardens Limited Partnership et al.).

*Frank Cochran,* for the appellees (plaintiffs).

SHEA, J. In this appeal from a declaratory ruling of the department of housing (DOH) approving the legality of a rent increase for a moderate rental housing project located in New Haven, the trial court held the increase invalid for failure to comply with the requirements of § 8-79a-15 of the Regulations of Connecticut State Agencies.[1] The appeal from the DOH ruling had been taken to the Superior Court by the plaintiffs, Beechwood Gardens Tenants' Association and seven tenants

---

[1] "[Regulations of Connecticut State Agencies] Sec. 8-79a-15. RENT INCREASE

"The following procedures shall be followed by all developers for any proposed rent increases: These regulations do not apply to rent increases based on circumstances such as family income or composition.

"(a) A 30 day written notice mailed to all tenants that a change in the rent schedule will be considered by the developer, at its next meeting, (include the date and time of the meeting) and may result in a rent increase.

"(b) Advise tenants that they may submit written comments to the developer within the 30 day period, and that they may review any documents supporting the proposed rent increase which will be on file at the office of the developer. Also, tenants may attend the meeting and make comments at that time.

"(c) At the end of the 30 day period, the developer shall submit within 15 days to the commissioner, its recommended management plan plus all tenant comments.

"(d) Within 30 days after receipt of the developer's recommendation the commissioner will approve, disapprove, or request modification of the rent increase or any portion thereof.

"(e) If the rent increase is approved by the commissioner, the developer must then give the tenants at least 30 days written notice prior to the effective date of the rent increase."

of the apartment complex affected by the increase. The defendants, Beechwood Gardens Limited Partnership and the individuals who comprise that partnership, Thomas Johnson and Wendell Harp, have appealed from the judgment sustaining the appeal,[2] claiming that the trial court erred in applying § 8-79a-15 to a rent increase that had been approved by DOH before the defendants had made their investment in the property. We find error and remand the case with direction to dismiss the appeal.

The subordinate facts are not presently disputed. Beginning in late 1983, the defendants Johnson and Harp submitted applications to DOH with respect to a privately owned apartment complex of eighty-two units in New Haven for the purpose of converting it into a moderate rental housing complex pursuant to General Statutes §§ 8-69 through 8-74. The final application, submitted on September 19, 1984, proposed renovation of all apartment units for energy conservation and, for eighteen units, to provide access to the handicapped. The estimated completion date for the improvements was February 1, 1986, and the projected rent upon completion of the renovations was $465 per month for each apartment.

On December 1, 1984, the individual defendants formed the defendant partnership, which was to purchase the apartment complex, known as Beechwood Gardens, and complete the project. On the same date the partnership submitted its "project financing plan and development budget" to DOH pursuant to General Statutes § 8-74. Attached to this document were two "project management" plans estimating annual income and expenses. The first estimate of yearly rental income of $326,400, was based upon a monthly rent of $425

---

[2] The department of housing, which was a party to the appeal in the trial court, has not appealed from the judgment.

for each of sixty-four units. This monthly rent, according to testimony at the DOH hearing, would be established while the planned renovations were being completed, it being contemplated that eighteen of the eighty-two apartments would not be occupied during this period. The second estimate of yearly rental income was $457,560, based upon a monthly rental of $465 for each of eighty-two units. According to the testimony at the hearing, this monthly rent was intended to be implemented upon substantial completion of the project. The documents submitted to DOH were approved on December 21, 1984.

After obtaining this approval, the partnership purchased the Beechwood Gardens apartment complex and, on April 9, 1986, substantially completed the proposed renovations. By a letter dated March 24, 1987, DOH permitted implementation of the $465 monthly rental upon execution of some additional documents. After these were submitted to DOH, the partnership notified all tenants of Beechwood Gardens that the monthly rent would be increased to $465, effective August 1, 1987.

The plaintiffs filed a request with DOH for a declaratory ruling invalidating the rent increase. After a hearing, DOH on February 10, 1988, issued a final decision in favor of the defendants, in which it was found that "during the development stage of this project, a rent of $465 per month had been approved by [DOH] to be implemented upon the final completion of the project." The plaintiffs appealed from this decision seeking its reversal and other relief.

The trial court accepted the factual finding of the DOH hearing officer[3] with respect to approval by DOH

---

[3] In the trial court the plaintiffs claimed that the hearing officer was disqualified because of his prior involvement with the Beechwood Gardens project as an agency employee. The trial court, after hearing evidence on

of the $465 monthly rent upon completion of the "development stage" of the project. The court concluded, nevertheless, that compliance with § 8-79a-15 of the regulations was mandated for implementation of the increase in rent from $425 to $465, even though DOH had previously approved the $465 rental charge to be effective upon completion of the project. Judgment was rendered sustaining the appeal.

The defendants have appealed from the judgment, claiming essentially that § 8-79a-15 is inapplicable to a rental increase that was endorsed by DOH as part of its approval of the entire project before the defendants had made their investment in it. The plaintiffs, presumably as an alternate ground upon which to sustain the judgment,[4] have attacked the finding of the hearing officer concerning prior DOH approval of the $465 rental charge, maintaining that it is unsupported by the evidence, despite the trial court's acceptance of that finding.

I

The regulation relied on by the trial court, § 8-79a-15, specifies certain procedures to be "followed by all developers for any proposed rent increases." A thirty

this issue, concluded that this prior involvement was not substantial and rejected the claim of disqualification. The plaintiffs do not contest that determination in the appeal to this court.

[4] The only issues set forth in the preliminary statement of issues filed by the plaintiffs as appellees pursuant to Practice Book § 4013 (a) (1) are: (1) whether the trial court correctly determined that compliance with § 8-79a-15 of the Regulations of Connecticut State Agencies was required before the $465 rental charge could be effective; and (2) whether the appeal to this court "is without substantial justification so that counsel fees should be awarded pursuant to [General Statutes] § 4-184a." Our reversal of the judgment is a sufficient response to the latter claim. Because the defendants claim no prejudice from the failure to include a challenge to the findings of the hearing officer in the plaintiffs' preliminary statement of issues, and have filed a reply brief responding to the plaintiffs' attack upon the finding, we consider this belatedly raised issue on the merits. See Practice Book § 4013 (a) (1) and (b).

day written notice of the proposed change in rent must be mailed to all tenants informing them also of the date and time of a meeting at which the increase is to be considered. Tenants may submit written comments and may also attend and express their views at the meeting. When the developer applies to DOH for approval of the rent increase, these tenant comments must also be submitted. Following DOH approval of the increase, the developer must give at least thirty days written notice prior to the effective date of the increase.

The defendants concede that they never complied with this regulation but point out that its applicability is limited to "any *proposed* rent increases." (Emphasis added.) The quoted phrase, they contend, does not include implementation of a change in a rent schedule previously approved by DOH. They also maintain that the trial court should have deferred to the DOH interpretation of the regulation as not applicable to the $465 rental charge.[5]

The trial court, in interpreting the regulation to apply to all increases in rent, including those approved at the time the project was authorized, relied upon (1) "the plain meaning of the language of that regulation"; (2) the provision of General Statutes § 8-72[6] that rents

---

[5] In concluding that the trial court's interpretation of § 8-79a-15 of the Regulations of Connecticut State Agencies was erroneous, we are not persuaded that the court disregarded the principle of judicial deference to interpretations of statutes and regulations made by agencies charged with their enforcement. See *E.I.S., Inc.* v. *Board of Registration,* 200 Conn. 145, 148–49, 509 A.2d 1056 (1986). The memorandum of decision acknowledges this principle, but properly notes that the degree of such deference is limited when there is no record of consistent agency practice in regard to the particular regulation relied upon, as in this case.

[6] General Statutes § 8-72 provides in part as follows: "Each developer or housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with providing decent, safe and sanitary dwelling accommodations, and no housing authority or non-

be fixed "at the lowest possible rates"; and (3) General Statutes § 8-74 (3),[7] requiring that a developer submit annual budgets. The plaintiffs advance the same arguments.

profit corporation shall construct or operate any such project for profit. To this end an authority or a nonprofit corporation shall fix the rentals for dwelling in its projects at no higher rates than it finds to be necessary in order to produce revenues which, together with all other available money, revenues, income and receipts of the authority or nonprofit corporation from whatever sources derived, will be sufficient (a) to pay, as the same become due, the principal and interest on the bonds of the authority or nonprofit corporation; (b) to meet the cost of, and to provide for, maintaining and operating the projects, including the cost of any insurance, and the administrative expenses of the authority or nonprofit corporation; provided nothing in this section shall be construed as prohibiting any authority or nonprofit corporation from providing for variable rentals based on family income. In the operation or management of housing projects an authority or nonprofit corporation shall, at all times, rent or lease the dwelling accommodations therein at rentals within the financial reach of families of low income. The authority or developer, subject to approval by the commissioner of housing, shall fix maximum income limits for the admission and for the continued occupancy of families in such housing, provided such maximum income limits and all revisions thereof for housing projects operated pursuant to any contract with any agency of the federal government shall be subject to the prior approval of such federal agency."

[7] General Statutes § 8-74 provides in part as follows: "No moderate rental housing project shall be developed until (1) the housing authority or, in the case of a developer, the commissioner of housing has held a public hearing which has been advertised in a newspaper having a circulation in the municipality or municipalities concerned at which hearing the question of the suitability of the proposed site may be raised, taking into consideration, among other matters, the nature and character of the area and neighborhood involved; (2) the commissioner of housing has approved the site, after having given due consideration to the public hearing, the plans and layout and the estimated cost of development, and (3) the commissioner has approved the proposed methods of financing, the proposed rents and income limits for admission and continued occupancy and a detailed estimate of the expenses and revenues thereof. During the period of any grant or loan contract entered into under part I or III of this chapter or this part, the developer shall submit to the commissioner for his approval its rent schedules and its standards of tenant eligibility and continued occupancy, and any changes therein and its proposed budget for each fiscal year, together with such reports and financial and operating statements as the commissioner finds necessary."

Because § 8-79a-15 refers only to "any *proposed* rent increases," (emphasis added) the "plain meaning of the language" that the court relied on is not sufficiently clear to resolve the controversy before us simply on that basis. As the defendants maintain, the $465 rental charge had been approved on December 21, 1984, as part of the plan for the entire project to take effect upon its completion. Approval by DOH of the "proposed rents" is a prerequisite to developing a moderate rental housing project and must be obtained when the project is authorized. General Statutes § 8-74 (3). Subparagraph (a) of the regulation requires notice that "a change in the rent schedule" is to be considered by the developer "and may result in a rent increase." The schedule of rents submitted to DOH at the time of project approval, which showed the $465 rent for the eighty-two apartment units after completion, was not changed simply by imposition of a rental charge in accordance with that schedule. From the grammatical viewpoint, whether the reference to "any proposed rent increases" should include implementation of a previously approved rental increase is less than "plain," as the court assumed.

The court found support for its interpretation in the provision of § 8-72 declaring that "[e]ach developer . . . shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with providing decent, safe and sanitary dwelling accommodations . . . ." The fact that the initial rent was set at $425 per month while renovations were being completed, the "lowest possible" rate as determined by DOH in accordance with the statute, was regarded by the court as an indication that no higher rent was necessary. The assumption of the court that the $425 approved as the "lowest possible" rent during the renovation period would also be the

appropriate rent afterward, however, ignores the finding of the DOH hearing officer that the $425 rental was adequate during renovations "due to certain costs being covered by the construction loan prior to full completion" and that "the higher amount was not necessary" for that period. At the hearing there was testimony that during the rehabilitation phase of the project taxes and insurance were paid from the construction loan, and that loan interest charges were less than upon completion, when all of these expenses had to be paid from rental income. The court does not appear to have rejected the finding of the hearing officer, nor could it have done so in view of the supporting testimony. Accordingly, there is no basis for its conclusion that the rent established for the development stage should necessarily prevail upon completion of the project.

The court also referred for support of its interpretation to a provision of General Statutes § 8-74 (3) requiring a developer to submit for DOH approval "its rent schedules . . . and any changes therein and its proposed budget for each fiscal year, together with such reports and financial and operating statements as the commissioner finds necessary." The plaintiffs argue that the purpose of this provision for annual DOH review of budgets would be undermined if the agency were permitted to approve future rent increases as part of the original project approval.

We are not persuaded that the provision for annual review of proposed budgets was intended to limit DOH at the time a project is approved to setting only rental charges that are to become effective immediately. Such annual surveillance of moderate rental housing projects with respect to financial operation serves many purposes, such as enforcement of rental charges previously approved, controlling various expenses, and generally safeguarding the continued financial viability of the projects, in which the state has a substantial interest

as a mortgage lender. DOH may well have decided that it was necessary to approve rental charges to become effective after completion of the planned rehabilitation so that investors would have some assurance of the ultimate income that the project would generate. Few would be inclined to invest in a project without being able to calculate with reasonable confidence the return likely to be realized. Nothing in § 8-74 can reasonably be construed to preclude DOH from establishing a lower rent for the development stage of a project, when tenants may be greatly inconvenienced by construction operations and not all of the costs must be paid from rental income, and a higher rent upon completion of the work, when these conditions have changed.

We conclude that the trial court erred in interpreting § 8-79a-15 of the regulations to apply to the implementation of a rental charge that had been approved by DOH when the project was first authorized but was not to take effect until completion of the project.

## II

In attacking the finding of the DOH hearing officer that approval of the $465 rent upon completion was included in the DOH authorization of the entire moderate rental project on December 21, 1984, the plaintiffs contend that there is no substantial evidence to support that finding. They maintain that the signature of the deputy commissioner indicating approval on that date of the "project financing plan and development budget" does not signify approval of the proposed rent of $465 for the eighty-two apartment units upon completion. The hearing officer could reasonably have found otherwise, however, since the $465 proposed rent was indicated in several other documents contained with the "project financing plan and development budget" in the defendants' final proposal, which was approved on that date. Section 8-74 requires approval

of the "proposed rents" as one of the prerequisites for development of any moderate rental housing project and it must be presumed that public officials have performed their statutory duties, in the absence of substantial evidence to the contrary. *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 254–55, 524 A.2d 610 (1987). "Public officers, acting in their official capacity, are presumed, until the contrary appears, to have acted legally and properly." *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 6, 513 A.2d 1218 (1986).

The plaintiffs also refer to a document obtained from the DOH file after the decision of the hearing officer indicating approval of $425 as the rent for eighty-two units on March 5, 1985, following the project approval on December 21, 1984. There is no reference to this document in the memorandum of decision, nor do the plaintiffs claim that it was ever called to the attention of the trial court. The plaintiffs have attempted to import this document into the record by attaching it to an affidavit filed while this appeal from the judgment of the trial court was pending,[8] claiming that it was admitted into evidence at a later DOH hearing on some unspecified matter. The statute governing this administrative appeal, however, specifies that "[t]he appeal shall be conducted by the court without a jury and *shall be confined to the record.*" (Emphasis added.) General Statutes (Rev. to 1987) § 4-183 (f).[9] The plaintiffs never attempted to enlarge the record by requesting the trial court to order further proceedings for taking additional

---

[8] This affidavit was filed in support of the plaintiffs' claim for attorney's fees pursuant to General Statutes § 4-184a. See footnote 4, supra.

[9] General Statutes (Rev. to 1987) § 4-183 (f) provides as follows: "The appeal shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs."

evidence pursuant to General Statutes (Rev. to 1987) § 4-183 (e).[10] The plaintiffs are, therefore, necessarily limited in this appeal to the evidence presented at the DOH hearing and cannot be permitted to rely upon matters never called to the attention of any trier of fact. The factual issue they seek to raise for the first time on appeal cannot be adequately explored at this stage of the proceeding.

We conclude that there is sufficient evidence in the record to sustain the finding that the $465 rent had been approved by DOH as part of the project authorization on December 21, 1984, to become effective on completion of the project.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the plaintiffs' appeal.

In this opinion COVELLO, HULL and SANTANIELLO, Js., concurred.

GLASS, J., dissenting. Because I believe that the majority opinion establishes an unwarranted precedent by sanctioning a procedure that allows a developer of a moderate rental housing project to increase rents by not complying with the spirit if not the letter of § 8-79a-15 of the Regulations of Connecticut State Agencies, I dissent.

---

[10] General Statutes (Rev. to 1987) § 4-183 (e) provides as follows: "If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court."

I accept the analysis of the regulation as set forth in the majority opinion. Under § 8-79a-15, the tenants have a right to a thirty day written notice that a change in the rent schedule will be considered by the developer at its next meeting. The tenants, during the thirty day period, have a right to submit written comments to the developer and review any documents supporting the proposed rent increase, which will be on file at the office of the developer or management agent. The tenants may attend the noticed meeting and make comments about the proposed rent increase. Furthermore, within fifteen days of the written noticed meeting, the developer must submit to the department of housing (DOH) its recommended management plan plus all of the comments of the tenants. Within thirty days after receipt of the developer's recommendation, the DOH must approve, disapprove or request modification of the rent increase or any portion of it. If the rent increase is approved by DOH, the developer must give the tenants at least thirty days written notice prior to the effective date of the rent increase. Thus, it must be stressed from the outset that this case has nothing to do with the merits of the determination of whether a developer's request for a rent increase should be granted. Rather, this case only concerns a developer's compliance with § 8-79a-15 as it pertains to a tenant's right to notice and a hearing regarding rent increases.

The majority opinion recognizes that "[t]he defendants concede that they never complied with this regulation but point out that its applicability is limited to 'any *proposed* rent increases.' (Emphasis added.)" The quoted phrase, the defendants contend, and the majority agrees, does not include implementation of a change in a rent schedule previously approved by DOH. Apparently, however, DOH had some misgivings about the developers' noncompliance with the regulation because on March 24, 1987, Michael T. Duffy, sen-

ior director, management division of DOH, wrote a letter[1] to Wendell C. Harp, general partner of Renais-

[1] "Mr. Wendell C. Harp
General Partner
Renaissance Beechwood Gardens
    Management, Inc.
74 Dwight Street
New Haven, CT 06511

Dear Mr. Harp:

Re: Meeting at Department of Housing on February 18, 1987 and subsequent meeting at Beechwood Gardens on March 10, 1987.

This letter contains important issues that must be addressed by the Management of Beechwood Gardens in order to assure conformity to State regulations and procedures. The Department appreciates meeting with you to address these issues. We feel that these meetings were very helpful and much was accomplished. However, we expressed our strong concern with regard to the management operations of this complex. The following is a reiteration of the discussions that took place during our meetings and our directives on the actions we want you to pursue.

Financial Statements

No management financial statements had been completed as of February 18, 1987. However, subsequent to that date a staff member from our accounting section has met with your accountant and financial statements through December 31, 1986 were received February 24, 1987. We expect that the financial statements for March 31, 1987 will be submitted in a timely fashion. As we pointed out, these statements are critical to Department of Housing for review of the operation and financial status of your complex.

Rents/Management Plan

It was determined during our post-occupancy review that the rental being charged to all new tenants and for those tenants occupying the 18 rehabilitated units was $465. You indicated during the meetings that it was your understanding that the $465 rental charge was approved during the development stage for all of the units. It was acknowledged that this rent charge was an issue to be determined after reviewing our files.

It has been determined through a review of our files that you had submitted a management plan for development and 2 project management plans for operations. One of the project management plans was for 64 units at $425 which would be used during the construction phase of the complex. The other project management plan for operations, which you submitted, was for 82 units at $465 which would be used at time of completion of the complex. Since it was your understanding that both these project management plans were approved, you implemented the rental charge of $465 as of April 1986. It was also determined during our March 10, 1987 meeting

sance Beechwood Gardens. Among other matters discussed in his letter, Duffy stated: "In order to complete

that currently those tenants that have been residents of the complex all along are not being charged the $465 rent. In order to complete our files, we are enclosing a project management plan for 82 units, at a rental charge of $465. Until this time, this document had not been fully executed. This requires your local execution and should be returned to this Department for approval. This approval will be retroactive to April 1986. However, this rent of $465 cannot be charged to any current tenants until they receive thirty (30) days notice (no sooner than May 1, 1987) of this rental change.

In order to submit a new management plan, due process must be performed by the management of the complex. That is, if you would like to propose a rental increase above the $465, you would have to execute the following procedures:

(1) A 30 day written notice mailed to all tenants that a change in the rent schedule will be considered by the developer at its next meeting, (including the date and time of the meeting) and may result in a rent increase.

(2) Advise tenants that they can submit written comments to the developer within the 30 day period, and that they may review any documents supporting the proposed rent increase which will be on file at the office of the developer or management agent. Also, tenants may attend meeting and make comments at that time.

(3) At the end of the 30 day period, the developer shall submit within 15 days to the Department its recommended management plan plus all tenant comments.

(4) Within 15 days after receipt of the developer's recommendation, the Department will approve, disapprove or request modification of the rent increase or any portion thereof.

(5) If the rent increase is approved by the Department, the developer must then give the tenants at least 30 days written notice prior to the effective date of the rent increase.

Therefore, the management plan which you recently submitted could not be considered at this time. Once you have revised this management plan based upon the information in this letter and once you have followed the above procedure, please submit a new management plan for review and approval."

You also requested whether you could have the fee waived until the final audit. Our regulations are clear that the management fee will begin at the time a Certificate of Occupancy is issued.

Post-Occupancy Review (dated February 5, 1987)

During our meeting of 3-10-87 you indicated that a response was sent to DOH dated January 11, 1987. However, in reviewing this letter, it is our feeling that this letter is in response to one sent to you on 12-12-86 from Michael Duffy with regard to a proposed management plan and rental increase.

our files, we are enclosing a project management plan for 82 units at a rental charge of $465. Until this time, this document had not been fully executed. This requires your local execution and should be returned to this Department for approval. This approval will be retroactive to April 1986. However, this rent of $465 cannot be charged to any current tenants until they receive thirty (30) days notice (no sooner than May 1, 1987) of this rental change." In sum, the DOH belatedly suggested that the developers could be rescued from noncompliance by the execution of a project management plan for eighty-two housing units at a rental charge of $465, as the DOH indicated that its approval would "be retroactive" to April, 1986. According to another letter, dated March 31, 1987, from Duffy to Harp, a "fully executed Management Plan [became] effective April 9, 1986."

Thus, this "retroactive" approval of the developers' management plan enabled the developers to circumvent § 8-79a-15 of the regulations. Clearly, § 8-79a-15 of the regulations does no more than give the tenants of a moderate rental housing project an opportunity to have their views considered in the determination by

---

Although the post-occupancy review may have covered similar concerns, we ask that you respond directly to our post-occupancy review at your earliest convenience.

We hope that the above will resolve any past or current concerns with regard to the management of Beechwood Gardens. We also hope that the management of Beechwood Gardens will be strengthened to prevent similar gaps in implementing state rules and regulations in the future. With continuous communications between Beechwood Gardens and this Department, a good working relationship may be established. If we can be of any further assistance, please contact this office at 566-3329.

> Very truly yours,
> [s] Michael T. Duffy
> Senior Director
> Management Division"

DOH as to whether it should approve or disapprove a proposed rental increase by a moderate rental housing project developer. Giving the tenants a right to be heard does not compel disapproval of the developer's proposal. Presumably, DOH will determine the matter on its merits. Nonetheless, the majority concludes "that the trial court erred in interpreting § 8-79a-15 of the regulations to apply to the implementation of a rental charge that had been approved by DOH when the project was first authorized but was not to take effect until completion of the project."

This determination by the majority allows a moderate rental housing project developer to bank and stack rent increases in the developer's application and thus completely bypass the tenants' right under § 8-79a-15 to have their views considered in conjunction with the proposed rent increase. To the poor tenant, I am unpersuaded that there is difference between "any proposed rent increase" and a "previously approved rental increase." The tenant pays more money regardless of the characterization of the "rent." It is significant to note that a letter[2] dated June 24, 1987, sent by Bruce

---

[2] "June 24, 1987

Mr. Kevin Mullane
600 Whalley Avenue
New Haven, CT 06511

Re: Notice of rent increase effective August 1, 1987 and requirement for execution of apartment lease

Dear Mr. Mullane:

Effective as of August 1, 1987 the required* lease rent for your apartment will be $465 (four hundred sixty five dollars) per month. If you are renting a garage the cost will be $20 per month for the garage rental. The subject increase is being executed in conformity with applicable department of housing regulations. Additionally, you are required to execute a one year lease effective as of the August 1, 1987 date. In accordance with the provisions of the lease you must provide evidence of income from your employer. Accordingly we request that you obtain a statement on your employer's letterhead stating your current annual income.

Lebow, senior property manager of Beechwood Gardens, to give notice to the tenants about their future rent, characterized the action as follows: "Notice of rent increase effective August 1, 1987 and requirement for execution of apartment lease." Thus, if the tenants were being notified of a previously approved rent, it is mysterious as to why it would be characterized as a "notice of rent increase."

In addition, by endorsing the procedure used by the developers to circumvent the spirit if not the letter of § 8-79a-15, the majority speculates on the inducements for investors to place capital into moderate rental housing projects. The majority states: "DOH may well have decided that it was necessary to approve rental charges to become effective after completion of the planned rehabilitation so that investors would have some assurance of the ultimate income that the project would generate. Few would be inclined to invest in a project without being able to calculate with reasonable confidence the return likely to be realized. Nothing in § 8-74 can reasonably be construed to preclude DOH from establishing a lower rent for the development stage of a project, when tenants may be greatly inconvenienced by construction operations and not all of the costs must be paid from rental income, and a higher rent upon completion of the work, when these conditions have changed." In my view, however, § 8-79a-15 is a consumer-oriented regulation. It gives a tenant a minimum input in a moderate rental housing project rent

---

It has been a pleasure having you as a Beechwood tenant and I look forward to your continued tenancy. I will contact you in the near future concerning a date for execution of your lease.

> Sincerely,
> /s/ Bruce Lebow
> Senior Property Manager"

*DOH regulations require a 2% surcharge for tenants whose income exceeds the Moderate Income Guidelines."

increase decision. I am unable to discern any need to speculate about the inducements for investment in moderate rental public housing. Moreover, I do not understand, and the majority leaves it unexplained, as to how allowing tenants some input in a rent increase decision in a government controlled moderate rental housing project will, somehow, discourage investors. Certainly there is no demonstrated need to shield the investor-developer from the tenant-consumer. Furthermore, although I am unable to draw a definitive inference from DOH's failure to join in this appeal, in my view, it is indicative of DOH's acceptance of the trial court's construction and application of § 8-79a-15.

In sum, I do not believe that the construction of § 8-79a-15 given by the majority is warranted. The majority's construction of this regulation sanctions a moderate rental housing project developer's action of banking and stacking rent increases in the project application, thereby emasculating the tenants' right to a hearing and to notice under § 8-79a-15. I therefore dissent.