The plaintiff Beachead Development Corp. is appealing the denial by the Planning and Zoning Commission of the Town of East Haven of its request for a one-year extension of its preliminary site plan. The record reveals and the defendant admits that Beachead owns a 10.5 acre parcel of land containing on Manville Road in East Haven. On December 4, 1985, the defendant Commission approved, subject to conditions, Beachead's preliminary CT Page 4350 site plan for its "Beachead Planned Development District" (the "District"), which consisted of the construction of a 174 unit residential condominium project. The approval was for five years. The project entailed four phases of which three have been completed (135 units out of 174 have been built.) The fourth phase (Phase III of the project) was approved by the Commission in September, 1988.
By letter dated August 23, 1990, plaintiff requested an extension of the site plan approval to allow the plaintiff the opportunity to construct the final phase. In the letter the plaintiff stated that, "[p]resent market conditions have made it completely unrealistic for us to construct this final phase at the present time. However, we believe that if the requested extension is granted, we will be able to complete the project in satisfactory fashion."
A public hearing was held on November 7, 1990, at which the Commission heard evidence on Beachead's request to complete the construction of the project pursuant to Section 26.4 of the Town of East Haven Zoning Regulations. Based on the testimony presented at the public hearing, the Commission, during its regular meeting on November 7, 1990, unanimously denied the request for extension. Beachead is appealing from this denial by the Commission.
JURISDICTION
"Appeals to courts from administrative agencies exist only under statutory authority." Chales Holdings, Ltd. v. Planning 
Zoning Board of Appeals, 208 Conn. 476, 479 (1988). In order to exercise the statutory privilege of bringing a zoning appeal, the appellant must strictly comply with the statutory provisions which created the right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. Section 8-9 of the General Statutes provides that appeals from planning and zoning commissions may be taken to the Superior Court in accordance with Section 8-8. Conn. Gen. Stat.8-9 (rev'd to 1989).
Aggrievement
Pleading and proof of aggrievement of the party seeking to appeal from a decision pursuant to Conn. Gen. Stat. 8-8 and 8-9
are prerequisites to maintaining an appeal. Primerica v. Planning Zoning Commission, 211 Conn. 85, 92 (1989). An owner of the subject property is aggrieved and entitled to bring an appeal. Bossert Corp. v. Norwalk, 157 Conn. 279, 285 (1968). In the complaint, paragraph 1, the plaintiff Beachead alleges that it CT Page 4351 "was and continues to be the Declarant and Owner of a portion of a parcel of land containing 10.5 acres more or less situated on Manville Road, in said East Haven." The record does not contain a deed. However, in the defendant's answer, paragraph 1 is admitted.
On the basis of the admission, the court determines that the plaintiff, as the owner of the subject property, is aggrieved and entitled to bring this appeal.
Timeliness
Any person who is aggrieved by a decision of the zoning commission may bring an appeal by commencing service of process within fifteen days from publication of notice of the Commission's decision. Conn. Gen. Stat. 8-8 (rev'd to 1989, as amended by P.A. 90-286. Section 1(b)). The plaintiff alleges that notice of the Commission's November 7, 1990 decision was published on November 12, 1990. Although the record does not contain a certified copy of a newspaper publication, the defendant has admitted in its answer the allegations in paragraph 7 of the complaint. The East Haven Clerk and Planning and Zoning Commissioner were served on November 21, 1990 and the appeal was filed on November 27, 1990.
On that basis, the court determines that November 12, 1990 was the publication date. The appeal was properly brought within fifteen days of publication.
Scope of Review
The trial court is not at liberty to substitute its judgment for that of the agency but, rather, should review the record to determine whether the agency has acted fairly or with proper motives or upon valid reasons. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73 (1988); Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988). The trial court may grant relief only where the agency has acted illegally, arbitrarily, or in abuse of its discretion. Frito-Lay, Inc.,206 Conn. at 573. The plaintiff has the burden of proving that the agency acted improperly. Adolphson, 205 Conn. at 707.
Issues Raised By Plaintiff
At the Commission's regular meeting on November 7, 1990, a motion was made and seconded that Beachead's request for an extension be denied based on testimony presented at the public hearing. The motion carried unanimously. The plaintiffs are appealing on the ground that the Commission's denial of the extension was arbitrary, illegal and in abuse of its discretion in CT Page 4352 that (1) the Commission wrongfully denied the plaintiff the right to complete the final phase of its development; and, (2) the Commission failed to base its decision upon the "good cause" standard as required by Section 26.4 of the East Haven Planning and Zoning Regulations.
Commission Wrongfully Denied Plaintiff the Right to Complete the Final Phase of its Development
In Beachead's brief in support of the appeal, Beachead contends that the Commission's approval of the development plan on December 4, 1985 was subject to further final approval. The plaintiff argues that Conn. Gen. Stat. 8-2d revives Conn. Gen. Stat. 8-13(f) which gives a developer five years from the date of final approval to complete the development. According to the plaintiff, because approval of the final phase was given in September of 1988, five years from that date would extend the time beyond that allowed under section 26.4 of the East Haven Planning and Zoning Regulations. The plaintiff argues that, when an inconsistency occurs between a state statute and a local regulation, the state statute is controlling.
The Commission counters that pursuant to Section 26.4 of the regulations, the plaintiff has five years to complete the development authorized by the Commission except for a one year extension upon a showing for good cause. The defendant contends that Conn. Gen. Stat. 8-2 does not resurrect Conn. Gen. Stat. 8-13f and, thus, a conflict does not exist between the statute and the regulation. Id. at pp. 3-4.
Conn. Gen. Stat. 8-2d provides that:
 Any land use regulations concerning planned unit developments or planned residential developments adopted by a municipal zoning commission, planning and zoning commission or other applicable zoning authority pursuant to sections 8-13b to 8-13k, inclusive of the general statutes, revision of 1958, revised to January 1, 1985, shall continue to be valid and any planned until development or planned residential development proposed in accordance with such regulations which has received approval, whether tentative, preliminary or final, from such commission or authority prior to July 1, 1985, shall continue to be governed by the provisions of such regulations.
Sections 8-13b to 18-131, inclusive, of the General Statutes were repealed by Public Act No. 85-409, Sec. 7, effective July 1, 1985. CT Page 4353 "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." Ford Motor Credit Co. v. B.W. Beardsley, Inc., 208 Conn. 13, 20 (1988). "A statute does not become ambiguous solely because the parties disagree as to its meaning." Id. at 18.
A common sense construction of Conn. Gen. Stat. 8-2d leads to the conclusion that this section authorizes the continued validity of certain land use regulations concerning planned unit or residential developments adopted pursuant to Sections 8-13b to 18-13k of the General Statutes, and any development which has received approval prior to July 1, 1985 in accordance with these regulations shall continue to be governed by them. Section 8-2d
does not resurrect Section 8-13(f). Furthermore, this statute is not even applicable as the Commission approved this planned development on December 4, 1985. Thus the East Haven Planning and Zoning Regulation Section 26.4 does not conflict with a state statute and the East Haven regulation governs the time limitation which is five years from the effective date of the planned development district except for the granting of one year extensions upon a showing of good cause. The effective date of the district in this case was December 4, 1985, the date the site plan was approved.
The Commission Failed to Base its Decision Upon the Good Cause Standard Required by Section 26.4 of the East Haven Planning and Zoning Regulations
The plaintiff argues that it has sought an extension based on the real estate market conditions, but that no challenge to the sufficiency of this reason appears in the record. The plaintiff notes that, at the hearing, the extension was challenged by the board members of the Homeowners Association and "[t]he gravemen (sic) of the complaints [of the homeowners] were the installation of the sprinkler system which was installed several years ago." Id.
The defendant counters that in order to find "good cause", the Commission must find good reason or justification for he delay in completing the project and the record is devoid reason. "A downturn in economic conditions and a change in the development's ownership do not rise to the level of good cause, especially where there was abundant testimony from homeowners in the complex as to the severe nature of ongoing problems." The defendant contends that the record is replete with testimony which could have led the Commission to conclude that lack of sales was due to construction and fire safety problems.
The Commission denied the extension based on testimony presented at the public hearing. If the zoning authority has not CT Page 4354 stated on the record the reasons for its decision, the court must search the record to find a basis for the action taken. A. P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 186
(1974). Because the Commission has not provided the specific reasons for its decision, a search of the record is appropriate.
The record reflects that the request for extension of time to complete the construction of the approved Planned Development District was made pursuant to Section 26.4 of the zoning regulations. Section 26.4 provides the following:
 Adoption of a Planned Development District by the Commission shall constitute authorization to establish the uses, buildings, structures and site development in accordance with the standards and Development Plan adopted by the Commission for the District and in accordance with detailed specifications approved by the Commission. The development authorized by the District shall be completed within five (5) years from the effective date of the District, except that the Commission may extend the time for completion for one (1) year periods after public hearing for good cause shown; otherwise the Commission shall be deemed authorized by the owner or owners of land within the District to amend these Regulations and the Zoning Map, deleting the Planned Development District and establishing for such land the previous or another zoning district. (emphasis added.)
The transcript of the public hearing reflects that Attorney Senie of the firm of Senie, Stock and LaChance was present at the hearing to represent the project developers. Attorney Senie stated on the record that the firm was a part owner of the project. Mr. Mingione, the zoning officer, noted that the regulation requires that good cause be shown for an extension and asked Attorney Senie to elaborate on what that cause is. Attorney Senie responded:
 The units at Four Beaches were designed to meet a particular market, a midlevel market. That market has disappeared now and we would like the time to go back and redesign so that we can construct units that may be sold to some level of the market. We were talking about somewhat more expensive units to get ourselves out of that midrange into a little bit higher. There are (sic) simply no market CT Page 4355 for these units at the present time. We're hoping that conditions will change and we're hoping with our engineers and with the bank we can come up with a plan for constructing . . . (unclear)
When asked by Mr. Mingione if the cause was then economic, Mr. Senie responded:
 It is mostly the real estate market and I should say that this is a little different than the project that was approved six or nine months ago. It is still a raw site. We have invested many millions of dollars and the bank has stayed with us in default of our loan, we have worked together to auction forty units off. We were going to lose the property if we didn't meet a certain threshold market at that auction. We hit that threshold, that gives us a year and a half grace period, interest is accruing, the bank is being very cooperative, we are sitting down to figure out how we can design units that will sell in today's market.
The transcript then reflects that evidence was presented opposing the extension. Mr. Romano, member and chairman of the Planning and Zoning Commission at the time the project was originally approved and now owner, resident and president of the complex's Homeowners Association, was the first to testify against the granting of the extension. Mr. Romano, who is no longer a member of the Commission, stated in part that "early in the construction process the developers were cited for a variety of violations from the building department and the fire marshall's office." He went on to state that some of these violations still exist and "[t]he quality of the construction has turned out to be inferior to that which was expected." Mr. Romano argued that the "[i]nferior construction and the questions of fire safety moreso (sic) the developers trying to sell the units to the point that they resorted to an auction to get rid of completed units."
Mr. Romano further stated for the record that:
 The result of all these activities was a change in the character of the project as perceived by the general public. It has been labeled by some as a distressed project of marginal construction and quality in serious financial trouble. This project is now 80% complete. Although it was approved five years ago, the amenities are in place, but one CT Page 4356 entire building has not even been started yet. There has been no real construction in over a year. I believe the developer has had ample time to complete the project within the time schedule. The problem of code compliance were (sic) of their own doing. Certain problems such as the sprinkler system have been a continual problem. They continue to this day to be a problem. The product he produced is not the same as what he promised (sic) the town when seeking his approvals. It is not the quality project we thought we approved five years ago. . . . There is no sense in adding to the problems that already exist.
The remainder of the testimony at the hearing focused on problems with the sprinkler system. Attorney Senie stated that the fire sprinkler problem was partially the result of the change in personnel of the fire marshall. The prior fire marshall determined that spinklers were not necessary. However, the new marshall disagreed and the sprinklers had to be retrofitted into the condominium units that were already completed which was a very difficult and expensive procedure according to Attorney Senie. Several residents testified that the system is faulty and Mr. Mingione noted that the zoning office has received calls concerning problems with the system.
Mr. Romano further testified that several residents including himself refused to have the sprinkler system installed because of the problems and that he was arrested for not allowing the system to be installed. Moreover, according to Mr. Romano, other problems exist such as missing walkways, sinking buildings and waterproofing problems.
In general, it is the function of a zoning commission to decide "within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulation applies . . . and the manner in which it does apply." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440
(1991); Schwartz v. Planning Zoning Commission, 208 Conn. 146,152 (1988). Thereafter, the court must decide whether the Commission correctly interpreted the section of the regulation and applied it with reasonable discretion to the facts. Id. The Commission is endowed with a liberal discretion in applying the law to the facts and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. Id.
Because the regulation is a local legislative enactment, in its interpretation the court seeks to discern the intent of the legislative body as manifested in the words of the regulation. CT Page 4357 Spero, 217 Conn. at 441. However, as regulations are in derogation of common law property rights, "the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within express terms." Id.
 The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning; and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected. Common sense must be used in construing the regulation and we assume that a rational and reasonable result was intended by the local legislative body.
Spero, 217 Conn. at 441 (citations omitted).
The interpretation of a statute by an agency created to administer that statute is generally accorded great deference. E.I.S., Inc. v. Board of Education, 200 Conn. 145, 148 (1986). However, the degree of such deference is limited when there is no record of consistent agency practice in regard to the particular regulation relied upon. Beechwood Gardens Tenants' Ass'n v. Department of Housing, 214 Conn. 505, 510 n. 5 (1990).
East Haven zoning regulation section 26.4 provides, in relevant part, that the Commission may grant an extension for "good cause" shown. The term "good cause" is not defined in section 4 of the regulations (RR #1). However, pursuant to section 4.1, the regulations provide that words not specifically defined "shall have the meaning commonly attributed to them. Doubts as to the precise meaning of words in these Regulations shall be determined by the Commission by resolution, giving due consideration to the expressed intentional purposes of the Regulations."
Because the record is devoid of any consistent agency practice with regard to prior interpretation of "good cause" as required by the regulation, the degree of deference that the court must accord to the Commission is limited. In case law, the interpretations of "good cause" have covered a wide spectrum. Jacques v. Cassidy, 28 Conn. Sup. 212, 219 (1969). "Good cause" is defined as:
 Term generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law. People v. Gillett, Colo. 629 P.2d 613, 618. Legally sufficient ground or reason. Phrase "good CT Page 4358 cause" depends upon circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed. Wilson v. Morris, Mo., 369 S.W.2d 402, 407. It is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which term is employed but also by context of action and procedures involved in type of case presented. Wray v. Folsom, D.C.Ark., 166 F. Sup. 390, 394, 395.
Black's Law Dictionary 692 (6th ed. 1990). See also Minney v. Secretary of Health, Education Welfare, 439 F. Sup. 706 (1977). Where "good cause" as a standard has no frame of reference, "the court's decision . . . is no more than a comparative evaluation of competing claims of need and prejudice." Jacques,28 Conn. Sup. at 220.
The plaintiff has stated that the reason it is seeking an extension is due to the conditions of the real estate market. Although plaintiff's "good cause" reason for seeking an extension is based on economics, the plaintiff has not presented any evidence on the record to support its contention that the midlevel market has disappeared and that there is no market for these units such that the plaintiff needs time to redesign the units into more expensive ones. On the other hand, the record does reflect testimony presented by several homeowners of problems with the units including, most notably, the faulty sprinkler system.
Because "good cause" is an amorphous term whose meaning is partially determined in the context of the action involved and, because deference is to be accorded to the agency's interpretation of the term, (albeit limited in this case in light of the lack of evidence in the record of consistent agency practice), the Commission has correctly interpreted the regulation and has applied it with reasonable discretion to the facts.
The testimony in the record supports the Commission's position that faulty construction rather than market conditions caused the diminishing sales. Because the plaintiff has not demonstrated that the Commission has failed to base its decision on the "good cause" standard as required by section 26.4 of the East Haven Planning and Zoning Regulations, the plaintiff has not met its burden of proving that the agency acted improperly.
For the foregoing reasons, the appeal is dismissed.
Barry R. Schaller, Judge CT Page 4359