RALPH M. SHULANSKY, COMMISSIONER OF BANKING
*v.* CAMBRIDGE-NEWPORT FINANCIAL
SERVICES CORPORATION

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 703490
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed February 24, 1992

*William J. Prensky,* assistant attorney general, with
whom was *Richard Blumenthal,* attorney general, for
the plaintiff.

*O'Connell, Flaherty & Attmore,* for the defendant.

AURIGEMMA, J. This is an action to enforce an administrative subpoena issued on July 14, 1992, by the state
banking commissioner (commissioner) pursuant to General Statutes § 36-495. The documents requested under
subpoena were sought in conjunction with an investigation commenced by the commissioner to determine
whether the defendant had violated or was about to
violate the Connecticut Uniform Securities Act (CUSA),
General Statutes § 36-470 et seq.

The defendant is not licensed by the commissioner
to sell securities in Connecticut. The commissioner subpoenaed, among other things, "copies of all documentation evidencing the raising of capital, borrowing of
funds and/or the offer or sale of notes or other indebt-

edness . . . ." The defendant failed to appear and produce the subpoenaed documents and has never complied with the subpoena.

The defendant has objected to the application on two grounds. First, he contends that the commissioner may not validly subpoena a corporation's records if the corporation is not licensed under CUSA. Second, the defendant argues that the commissioner cannot use the subpoena power pursuant to General Statutes § 36-495 (b) to determine whether the defendant is subject to this regulation, because such use of subpoena power allegedly violates the defendant's right to due process under the fourteenth amendment to the United States constitution and article first, § 10, of the constitution of Connecticut.

Section 36-495 (a) (1) permits the commissioner in his discretion to: "Make such public or private investigations within or outside of this state as he deems necessary to determine whether any person has violated or is about to violate any provision of this chapter or any regulation or order hereunder, or to aid in the enforcement of this chapter or in the prescribing of rules and forms hereunder . . . ." Section 36-495 (b) provides in pertinent part: "For the purpose of any investigation or proceeding under this chapter the commissioner or any officer designated by him may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the commissioner deems relevant or material to the inquiry."

Section 36-495 is a portion of CUSA, which is also known as the "blue sky law." This comprehensive statutory scheme was adopted for the protection of investors in this state. While there are few cases interpreting the provisions of CUSA, courts in other jurisdictions

have held that blue sky laws should be broadly and liberally construed so as to effectuate the purpose of protecting the investing public from fraud. See *McElfresh* v. *State,* 151 Fla. 140, 9 So. 2d 277 (1942); *Kerst* v. *Nelson,* 171 Minn. 191, 213 N.W. 904 (1927); *Union Land Associates* v. *Ussher,* 174 Or. 453, 149 P.2d 568 (1944).

Both state and federal courts reviewing investigatory subpoenas in the context of enforcement proceedings have traditionally refused to adjudicate questions of coverage; that is, whether activities under investigation are subject to regulation by the administrative body conducting the investigation. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 514–15, 461 A.2d 938 (1983); *In re Application of Ajello* v. *Moffie,* 179 Conn. 324, 426 A.2d 295 (1979); see also *United States* v. *Powell,* 379 U.S. 48, 57, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964); *Oklahoma Press Publishing Co.* v. *Walling,* 327 U.S. 186, 214, 66 S. Ct. 494, 90 L. Ed. 614 (1946); *Federal Trade Commission* v. *Texaco, Inc.,* 555 F.2d 862, 871–72 (D.C. Cir.) (en banc), cert. denied, 431 U.S. 974, 97 S. Ct. 2939, 53 L. Ed. 2d 1072 (1977); *Securities & Exchange Commission* v. *Brigadoon Scotch Distributing Co.,* 480 F.2d 1047, 1053 (2d Cir. 1973); *People ex rel. Fahner* v. *Halzel,* 114 Ill. App. 3d 560, 562, 449 N.E.2d 531 (1982).

In the case of *In re Application of Ajello* v. *Moffie,* supra, 326, which involved a proceeding initiated by the attorney general to enforce an investigative subpoena based on suspected violations of the Connecticut Anti-Trust Act, the Supreme Court held: "While courts which enforce such subpoenas may inquire into most questions of legality, they may not inquire into questions concerning the coverage or even the probable coverage of the statute under which the attorney general is acting." In *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 514, the Supreme Court

explained that the aforementioned holding in *Moffie* was based on the court's recognition that the legislature, when it endows an administrative body with responsibility for a statute's enforcement, may authorize that body, rather than the trial court, to determine the question of coverage in the preliminary investigation of possible violations. The Supreme Court further stated that where an administrative body has been authorized by the legislature to enforce a statute the body may "develop, without interference or delay, a factual basis for the determination of whether particular activities come within its regulatory authority. *Securities & Exchange Commission* v. *Brigadoon Scotch Distributing Co.,* [supra, 1052–53]." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 514–15.

In *Securities & Exchange Commission* v. *Wall Street Transcript Corporation,* 422 F.2d 1371, 1375 (2d Cir.), cert. denied, 398 U.S. 598, 90 S. Ct. 2170, 26 L. Ed. 2d 542 (1970), the Second Circuit Court of Appeals stated: "It has long been established that the question of the inclusion of a particular person or entity within the coverage of a regulatory statute is generally for initial determination by an agency, subject to review on direct appeal, rather than for a district court whose jurisdiction is invoked to enforce an administrative subpoena."

It is clear from the aforementioned authorities that in cases to enforce investigative subpoenas, the initial determination of whether a particular person or entity comes within the coverage of a regulatory statute is made by the agency, not by the court.

Essentially, the defendant argues here that it is not licensed by the banking commissioner to sell securities, and there is no evidence before the court that the defendant is a broker-dealer, investment adviser, or otherwise engaged in the sale of securities. The com-

missioner only has jurisdiction over those licensed to sell securities and, therefore, has no jurisdiction over the defendant. Such an interpretation of the commissioner's powers under CUSA is ludicrous. If the commissioner were able to investigate only those persons he has licensed, then he would be unable to discover any facts that would enable him to bring enforcement actions against those who sell securities in Connecticut without a license.

Courts have required a showing that an agency's investigation is conducted pursuant to its statutory authority, that materials sought are relevant to the inquiry, and that the request is specific and not unduly burdensome. See, e.g., *State* v. *Ghiloni*, 35 Conn. Sup. 570, 398 A.2d 1204 (1978); see also *United States* v. *Powell*, supra, 57–58; *United States* v. *Morton Salt Co.*, 338 U.S. 632, 653, 70 S. Ct. 357, 94 L. Ed. 401 (1949); *Securities & Exchange Commission* v. *Brigadoon Scotch Distributing Co.*, supra, 1053.

Section 36-495 clearly authorizes the commissioner to engage in investigations to determine whether any person has violated any provision of CUSA, including the unauthorized sale of securities. The commissioner has subpoenaed stocks, notes and other evidence of indebtedness, which fall within the statutory definition of "security" for purposes of CUSA under General Statutes § 36-471 (12). The other documents requested relate to aspects of the activities of the defendant in allegedly raising capital by means of stock offerings, indebtedness or otherwise. They all appear to be relevant to the investigation of whether the defendant engaged in a violation of CUSA. The defendant has not claimed that the materials requested are not relevant to the investigation, but only that the commissioner has no jurisdiction over the defendant. The defendant also does not claim that the materials requested are burdensome or that the description of those materials is vague.

The defendant has argued that the commissioner should not be permitted to enforce the subpoena without first proving facts and circumstances by which he claims jurisdiction over the defendant and that a failure to do so deprives the defendant of due process. The defendant's argument is based on *Jutkowitz* v. *Department of Health Services,* 220 Conn. 86, 596 A.2d 374 (1991). *Jutkowitz* involved the right to know the nature of the legal theory and the conduct that gave rise to an alleged violation of law in the context of a prosecution of that violation. The purpose of the investigative subpoena involved in the present case is to enable the commissioner to determine whether there has been a violation of the law. Prior to conducting an investigation, the commissioner is clearly not in a position to give the defendant notice of "the facts or conduct alleged to be in violation of the law." Based on the foregoing, there is no deprivation of the due process rights of the defendant during the investigation arising out of a failure to inform the defendant of the specific nature of the suspected violations.

The Connecticut Supreme Court has consistently held that there is a presumption of regularity with regard to the actions of public officials. The public officials are presumed to have acted legally and properly in discharging their duties until the contrary appears. *Beechwood Garden Tenants' Assn.* v. *Department of Housing,* 214 Conn. 505, 515, 572 A.2d 989 (1990); *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 6, 513 A.2d 1218 (1986).

The commissioner's subpoena of the defendant's records carries with it a presumption that it was issued legally, in good faith, and under proper authority for a proper purpose. In light of the presumption that the administrative subpoenas were issued for a proper purpose, the burden is shifted to the defendant to prove affirmatively that there was an improper purpose in

issuing them. *Chattanooga Pharmaceutical Assn.* v. *Department of Justice,* 358 F.2d 864 (6th Cir. 1966); *American Pharmaceutical Assn.* v. *Department of Justice,* 344 F. Sup. 9 (E.D. Mich. 1971), aff'd, 467 F.2d 1290 (6th Cir. 1972). The defendant must make a prima facie case through a showing of independent evidence that the purpose behind the issuance of the subpoenas was improper, i.e., that the subpoenas were issued in order to harass or punish, rather than to gain information relevant to the investigation. See *Finnell* v. *Department of Justice,* 535 F. Sup. 410, 413 (D. Kan. 1982).

In the present case there has been no evidence presented to rebut the presumption of good faith and regularity in the issuance of the subpoena. It appears clear that the subpoenas were issued in connection with an investigation of the unauthorized sale of securities, a subject over which the commissioner has authority under § 36-495.

Based on the foregoing, the court orders the defendant forthwith to comply with the subpoena duces tecum that is the subject of this action.