[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS AND REQUEST FOR TEMPORARY INJUNCTION
BACKGROUND
On May 19, 2000, the plaintiff commenced the instant declaratory judgment action with this court and moved for an ex parte temporary injunction or in the alternative for a temporary injunction after a hearing to enjoin the CHRO and other defendants from conducting further proceedings against the plaintiff. While the request for an ex parte
injunction was denied, a hearing was scheduled on June 19, 2000, on the plaintiff's motion for temporary injunction.
Prior to the hearing on the plaintiff's motion for temporary injunction, the defendants had filed a motion to dismiss the Plaintiff's declaratory judgment action and request for a temporary injunction claiming that the plaintiff Town of West Hartford had failed to exhaust its administrative remedies and therefor the Superior Court was without jurisdiction to entertain the declaratory judgment action or issue the requested injunction.
FACTS
On August 11, 1999, the CHRO issued a reasonable cause finding on the defendant couples' complaints of marital status and sexual orientation discrimination and certified the matter for a public hearing. On October 14, 1999, pursuant to Connecticut General Statutes § 4-176 (a), the plaintiff filed a petition seeking a declaratory ruling on the following legal issues:
 (a) whether Connecticut General Statutes § 46a-64
requires the plaintiff to offer couples without children or non-parent partners a family membership rate at Cornerstone?
 (b) whether Connecticut General Statutes § 46a-81d
requires the plaintiff to offer couples without children or non-parent partners the family membership rate at Cornerstone?
 (c) whether Connecticut General Statutes § 46a-64
CT Page 8491 requires the plaintiff to offer unmarried couples the benefit it offers to married couples, parents or legal guardians?
 (d) whether Connecticut General Statutes § 46a-81d
requires the plaintiff to offer to same sex couples the benefits it offers to married couples, parents or legal guardians?
Specifically six unmarried heterosexual and homosexual couples challenged the Town's membership rate structure for Cornerstone Aquatic Center. Cornerstone is an indoor pool and exercise facility that is owned and operated by the Town of West Hartford. Cornerstone's membership policy allows town residents to obtain a "family" membership at a rate significantly discounted from the rate charged for "single" memberships. After each applied for and was denied a family membership to Cornerstone between December 1997 and October 1998, the six unmarried cohabitating couples who are the defendants in this declaratory judgment action filed a discrimination complaint with the defendant CHRO.
On November 15, 1999, the parties attended a scheduling conference at which the date for a public hearing was set for July of 2000. At that conference there was no specific discussion of the disposition of the plaintiff's petition for a declaratory ruling. On November 17, 1999, the CHRO sent a letter to the plaintiff's counsel advising him that on November 10, 1999, the CHRO, pursuant to Connecticut General Statutes § 4-176 (e)(2) decided to set the plaintiff's petition for a declaratory ruling for specific proceedings, namely "the public hearing now set to begin with a hearing conference on Monday, November 15, 1999." The plaintiff received this letter on November 22, 1999.
The parties appear to be in agreement that the starting point for a request for an agency declaratory ruling is § 4-176 of the Connecticut General Statutes. That section provides that any person may petition the agency for a declaratory ruling on a matter within the jurisdiction of the agency. The statute then provides various time limits for certain actions by the agency when a declaratory ruling is requested. Two sections of the statute appear to be of paramount importance in deciding the matter before the court. Section 4-176
provides in pertinent part:
 "(e) Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: . . . (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and CT Page 8492 initiate regulation-making proceedings. . . . [and]
 (i) If an agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor, or within such longer period as may be agreed by the parties, the agency shall be deemed to have decided not to issue such ruling" (Emphasis added.)
Section 4-175 provides in pertinent part:
 "[I]f an agency . . . (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said § 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action."
It is uncontested that within the sixty day limit contained in §4-176 (e) CHRO, by setting a public hearing, ordered the matter for a specified proceeding in accordance with subsection (e)(2). It is equally uncontested that the agency has not issued a declaratory ruling within 180 days after the filing of a petition requesting such a ruling. The question facing this court is whether or not a longer period was agreed to by the Town of West Hartford.
This court is convinced that at the scheduling conference attended by the parties on November 15, 1999, the Town was unaware that its request for a declaratory ruling would not be ruled upon within 180 days. The Town first became aware that the 180 day requirement would be exceeded upon receipt of the CHRO's November 17, 1999 letter on November 22, 1999. There is no evidence that the Town either at the scheduling conference on November 15, 1999, or at any time after receipt of the notice on November 22, 1999, complained to CHRO or gave the agency a notice that it would object to the agency's failure to decide its request for declaratory ruling within the required 180 days.
The agency claims in its brief:
 "Thus, for more than six months — from mid November 1999 to June, 2000 — the plaintiff maintained complete and utter silence, and has not written or voiced any objection either to the CT Page 8493 Defendant CHRO or to this Court to having its declaratory ruling petition considered during the CHRO public hearing long since scheduled to begin in just two weeks." CHRO brief dated July 3, 2000 at p. 2.
The court finds the quoted language from the CHRO brief to be accurate and factual but irrelevant to a resolution of this dispute.
Dealing with acceptance in a contract setting the Restatement (Second) of Contracts, § 69 comment (a) reads:
 "Acceptance by silence is exceptional. . . . The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him a duty to speak. The exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as an acceptance."
The court finds no facts which would justify it in concluding that the Town affirmatively consented either in fact or by implication to an extension of the time within which the agency was required to act. Section 4-176 requires action within 180 days unless a longer time is "agreed by the parties." The defendants appear to argue that the agency may extend the time unless a longer period is objected to by the parties. Unfortunately for the defendants' position this is not the approach which the legislature has taken in drafting § 4-176 (i). CHRO has failed to act within the 180 day requirement imposed upon it by § 4-176 (i). The Town has not agreed to an extension. Because of this the Town is entitled, pursuant to § 4-175, to request the Superior Court for the same declaratory judgment which it had previously requested from CHRO. The declaratory judgment requested of this court is identical in all respects to the declaratory ruling previously requested from CHRO.
Because CHRO is deemed by operation of to have refused to issue a declaratory judgment, the Town no longer has an administrative remedy in this regard and accordingly has not failed to exhaust any administrative remedy. Faced with CHRO's inaction the Town has appropriately filed its declaratory judgment in court pursuant to § 4-175.
The motion to dismiss is denied. The requested declaratory judgment shall be entered in due course by the Superior Court. CT Page 8494
THE TEMPORARY INJUNCTION
To be entitled to the requested relief of a temporary injunction the plaintiff Town must show, in addition to lack of an adequate remedy at law,
(1) probable success on the merits of their claim;
(2) irreparable harm or loss; and
 (3) a favorable balancing of the results or harm which may be caused to one party or the other as well as to the public by the granting or denying of the temporary relief requested.
See Griffin Hospital v. Commission on Hospitals Health Care,196 Conn. 451, 457-458 (1985); Fleet National Bank v. Burke,45 Conn. Sup. 566, 570 (1998).
To some extent the Town and the agency and to a great extent the defendant couples argue the town's probable success on the merits.
A well written brief entitled "Defendant-Complainant's Memorandum of Law in Opposition to Plaintiff's Request for Temporary Injunction and Memorandum of Law in Support of Defendant Commission on Human Rights and Opportunities' Motion to Dismiss," dated July 3, 2000, argues eloquently that the Town's pool pricing practices are discriminatory.
This court does not believe that the legality of the Town's pool pricing practices is the issue upon which the Town must show probable success to be entitled to this injunction. Clearly, a Superior Court judge in the future must carefully examine the issues contained in the couples' brief. That examination, in the opinion of the court, will occur at the time that the court considers the declaratory judgment itself. However, the present issue would appear to be simply whether or not jurisdiction to decide the declaratory judgment now resides in the Superior Court or in the agency. On this issue, in view of the court's ruling, not only has the Town demonstrated probable success but in fact the Town has succeeded.
When the court examines the balancing of the results of harm which may be caused to one party or the other, as well as the public by the granting or denying of the temporary relief requested, the court again comes down on the side of the Town. The court can perceive no harm to any party or the public that would result from the agency's postponing any hearing on this matter until after the court's ruling on the Town's CT Page 8495 request for a declaratory judgment. The court acknowledges that our Supreme Court has "recognized the delay and disruption of administrative process that would result from judicial interference with statutorily authorized administrative investigations intended to determine whether there is a factual basis for the initiation of formal proceedings.Commission on Human Rights Opportunities v. Archdiocesan SchoolOffice, 202 Conn. 601, 606, appeal dismissed, 484 U.S. 805,108 S.Ct. 51, 98 L.Ed.2d 15 (1987). However, in the instant case there is no "statutorily authorized administrative investigations intended to determine whether there is a factual basis" because by failing to comply with the time limits of § 4-176 (i) the agency has shifted to the Superior Court the responsibility for rendering the declaratory judgment which is before it.
The Town relies on Sentra Securities Corp. v. Sherry J. McKeva,
1997 Conn. Supra Lexis 2110, a Superior Court decision decided by Judge Freed for the proposition that:
 "[I]rreparable harm will result because the plaintiffs would be forced to defend themselves in an unlawful arbitration which they never agreed to arbitrate. Further, the court would be abdicating its responsibility to determine arbitrability and allow an arbitrator to determine his own authority."
Later in the same opinion Judge Freed wrote:
 "Lastly, the court is of the opinion that the hardship suffered by the plaintiffs in forcing them to arbitrate a claim that they never agreed to arbitrate, would be a greater harm to that imposed on the defendant, because the plaintiffs would have to engage in a costly and time consuming process, which they should not be required to engage in.
For the reasons stated, above, Judge Freed granted the application for a temporary injunction.
It appears to this court that the reasoning of Sentra is driven by the fact that it is an arbitration matter. The court finds no authority, nor do the parties cite any, for the Town's contention that the potential for incurring costs in defending claims at a state agency administration proceeding would constitute irreparable harm.
While the court does not find that the holding of the proposed public hearings would cause irreparable harm to the plaintiff Town, neither does CT Page 8496 the court agree with the defendants' contention that the failure to hold the hearing would irreparably harm the defendants. The defendants are entitled to their day in court and a resolution of the matters submitted for declaratory ruling. They will receive their day in court. Further, if the court determines in rendering the declaratory judgment that §§46a-64 and 46a-81 (d) require the plaintiff to offer the claimed services at the claimed prices, a public hearing by the agency may well be essential to vindicate the couples' rights.
At the present time the court will not enjoin a scheduled public hearing because the court finds that the holding of the public hearing does not irreparably harm the plaintiff Town. While refusing to enjoin the public hearing, the court can discern no useful purpose in the hearings being held prior to a court decision on the declaratory judgment. It would appear that the agency would be doing a disservice to both the Town and the claimant couples by holding a meaningless hearing. However, finding no irreparable harm the court declines to enjoin such hearings.
The motion to dismiss the declaratory judgment is denied. The request for a temporary injunction is denied.
Kevin E. Booth, J.