COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
*v.* ARCHDIOCESAN SCHOOL OFFICE ET AL.
(12719)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued January 6—decision released March 24, 1987

*Robert B. Teitelman,* assistant attorney general, with whom were *Robert E. Walsh,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Arnold B. Feigin* and *Josephine Lauriello,* assistant attorneys general, for the appellant (plaintiff).

*Vincent J. Dowling,* with whom, on the brief, were *Louis B. Blumenfeld* and *Ellen M. Burns,* for the appellees (defendants).

SHEA, J. The trial court granted a motion to dismiss a petition of the commission on human rights and opportunities (CHRO) that had been brought pursuant to General Statutes § 46a-88[1] to require the defendants to answer certain interrogatories relating to its investigation of a complaint of employment discrimination in violation of General Statutes § 46a-60 (a) (1).[2] The relator, Susan J. Hunter, had filed a complaint with the CHRO pursuant to General Statutes § 46a-82[3] in which she claimed that she had been denied employ-

[1] "[General Statutes] Sec. 46a-88. ENFORCEMENT OF INTERROGATORIES. (a) Upon failure of any person to answer interrogatories issued pursuant to subsection (10) of section 46a-54, the commission may file a petition with the interrogatories attached with the superior court of the judicial district in which the violation is alleged to have occurred or where such person resides or transacts business, requesting the court to order that an answer be filed. . . ."

[2] "[General Statutes] Sec. 46a-60. (Formerly Sec. 31-126). DISCRIMINATORY EMPLOYMENT PRACTICES PROHIBITED. (a) It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation or physical disability, including, but not limited to, blindness . . . ."

[3] "[General Statutes] Sec. 46a-82. (Formerly Sec. 31-127). COMPLAINT: FILING. (a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission.

"(b) The commission, whenever it has reason to believe that any person has been engaged or is engaged in a discriminatory practice, may issue a complaint except for a violation of subsection (a) of section 46a-80."

ment as a teacher at a Catholic parochial school because her religious affiliation was not with the Roman Catholic Church. The court construed the statutory authority of the CHRO, as set forth in the Human Rights and Opportunities Act (HROA), General Statutes §§ 46a-51 through 46a-96, not to extend to religious organizations as employers and therefore concluded that the commission lacked jurisdiction to require the defendants to respond to the interrogatories it had propounded. We find error and remand the case for further proceedings.

In her sworn complaint, Hunter declared that in June, 1979, she had applied for a position as a first grade teacher at the St. Martin de Porres School in New Haven, that both the pastor of the church and the principal of the school had recommended her for the position after interviewing her, that she was told that a final interview with the individual defendant, the Reverend James G. Fanelli, superintendent of schools for the archdiocese of Hartford was necessary, that Fanelli told her in August, 1979, that he would not interview her because he wanted only Catholic teachers, and that, her religious affiliation being Methodist, she had been denied an employment opportunity because of her religion. On September 25, 1979, a copy of this complaint alleging a violation of General Statutes § 46a-60 was served on the defendant designated as "Archdiocesan School Office." A set of sixteen interrogatories was served on each defendant on June 19, 1981, which were not answered. Claiming that the information sought was needed to investigate the complaint, the CHRO on July 16, 1981, petitioned the Superior Court pursuant to § 46a-88 to order the defendants to respond.

The defendants initially filed a motion to dismiss on nonconstitutional grounds, which the trial court, *Vasington, J.,* denied, a ruling we need not consider

in this appeal.[4] On October 22, 1982, another motion to dismiss the petition was filed by the named defendant claiming the CHRO lacked jurisdiction over it because the application of the HROA to church related schools constituted excessive governmental entanglement in the administration of church affairs in violation of the first amendment to our federal constitution.[5]

In granting this motion on March 7, 1985, the trial court, *Aspell, J.,* concluded that, because the application of General Statutes § 46a-60, which prohibits religious discrimination in employment generally, to the defendants would raise serious constitutional questions, the statute should be construed to exempt religious

---

[4] The defendants filed the first motion to dismiss the petition on two grounds: (1) that neither of the defendants had been a prospective employer of Susan J. Hunter, the complainant; and (2) that the CHRO was exceeding its statutory authority by invoking an equitable remedy to enforce interrogatories. Attached to this motion was an affidavit of the Reverend James G. Fanelli declaring that he was the superintendent of schools for the Archdiocese of Hartford and was in charge of the Diocesan School Office, a division of the Hartford Roman Catholic Diocesan Corporation; that, to the best of his knowledge, there existed no such entity as the Archdiocesan School Office; and that in his capacity as such superintendent he does not contract with or pay the elementary school teachers who are employed at St. Martin De Porres School in New Haven. After this affidavit had been filed, the petition was amended to designate the Diocesan School Office of the Hartford Roman Catholic Diocesan Corporation as the defendant entity and to refer to Fanelli as the superintendent thereof. A specific prayer for relief in the form of an order to answer the interrogatories, absent from the original petition was also added.

In denying this motion the trial court, *Vasington, J.,* rejected the first ground of the motion to dismiss because § 46a-88 authorizes a petition for an order to respond to interrogatories "[u]pon the failure of any person to answer," not just prospective employers. The court construed the second ground of the motion to implicate only a procedural issue arising from the commencement of the action by means of an order to show cause, which had been obviated by the amendment of the petition.

[5] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I.

organizations from its coverage. The court relied upon *NLRB* v. *Catholic Bishop of Chicago,* 440 U.S. 490, 99 S. Ct. 1313, 59 L. Ed. 2d 533 (1979), in which the United States Supreme Court, despite a broad definition of employer containing no exemption for church related schools, construed the National Labor Relations Act to provide such an exemption because of the absence of a clear expression of an affirmative intention that teachers in church operated schools should be covered by the act. Finding no such expression of "affirmative intention" to include religious organizations within the ambit of "employer" in § 46a-60, the trial court, declining to resolve the "sensitive" first amendment issues that had been raised, held that the legislature had never intended that such organizations be subject to the jurisdiction of the CHRO.

We conclude that the named defendant's motion to dismiss should have been denied because it sought to raise prematurely issues that are not yet ripe for adjudication. Despite the considerable time that has elapsed since the relator filed her complaint on September 6, 1979, this proceeding has not advanced beyond the investigatory stage that must be completed before it can be determined whether "there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint . . . ." General Statutes § 46a-83 (a). The issuance of interrogatories by the CHRO to obtain information relating to any complaint under investigation necessary or useful in making that determination is expressly authorized by General Statutes § 46a-54 (10). "Upon failure of any person to answer interrogatories issued pursuant to subsection (10) of section 46a-54, the commission may file a petition . . . with the superior court . . . requesting the court to order that an answer be filed." General Statutes § 46a-88 (a).

The CHRO followed this statutory procedure when the defendants failed to respond to the interrogatories served upon them. In a closely analogous situation involving the investigatory powers of the attorney general under a statute authorizing the issuance of subpoenas for that purpose, this court has held that it is improper to make a determination of the substantive applicability of the statute to a particular case before completion of an investigation expressly authorized to be conducted prior to the institution of a proceeding against a person who may have violated the underlying statute. *In re Application of Ajello* v. *Moffie*, 179 Conn. 324, 325–26, 426 A.2d 295 (1979). "An administrative body so empowered may, by virtue of such authority, develop, without interference or delay, a factual basis for the determination of whether particular activities come within its regulatory authority." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 514–15, 461 A.2d 938 (1983). A petition filed pursuant to § 46a-88 does not present the issue of whether the defendants may be exempt from the coverage of the statute they may have violated, but only whether information relevant to the possible violation can be drawn forth. See *Oklahoma Press Publishing Co.* v. *Walling*, 327 U.S. 186, 211, 66 S. Ct. 494, 90 L. Ed. 614 (1946). So long as the interrogatories to be enforced are not plainly irrelevant to any lawful purpose of the CHRO, unduly burdensome, or violative of some privilege or other right of the person to whom they are addressed, the statute requires that they be answered, however doubtful the basis for a violation may appear at this preliminary investigative stage. See *Endicott Johnson Corporation* v. *Perkins*, 317 U.S. 501, 509, 63 S. Ct. 339, 87 L. Ed. 424 (1943); 1 K. Davis, Administrative Law § 4:6.

We have recognized an exception to the general bar against testing the coverage of a statute in a prelimi-

nary investigative proceeding where the legislative authority to empower the agency to conduct the investigation itself is challenged. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 515; see *Oklahoma Press Publishing Co.* v. *Walling,* supra, 209. The trial court, *Aspell, J.,* expressed some concern that the investigative powers of the CHRO, including its statutorily authorized issuance of interrogatories, posed a risk of infringing upon the first amendment rights of the defendants. The defendants also argue that, even though the issues may ultimately be decided in their favor, any exercise of CHRO jurisdiction might interfere with religious beliefs and practices and thus have a chilling effect on the church's hiring practices.

Similar considerations were advanced and found unpersuasive in the case of *Ohio Civil Rights Commission* v. *Dayton Christian Schools,* 477 U.S. 619, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986), in which the United States Supreme Court held that the federal courts should abstain from exercising jurisdiction to enjoin a state civil rights proceeding against a church related school based upon complaints of sex discrimination and infringement of constitutional rights sought to be justified pursuant to religious beliefs. The court concluded that the abstention doctrine, based upon principles of comity and federalism; see *Younger* v. *Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); applied to state administrative proceedings involving important state interests, such as the elimination of sex discrimination, so long as in the course of those proceedings there would be an adequate opportunity to raise any constitutional issues. "Even religious schools cannot claim to be wholly free from some state regulation." *Ohio Civil Rights Commission* v. *Dayton Christian Schools,* supra, 628. "[T]he Commission violates no constitutional rights by merely investigating the circumstances of [the complainant's] discharge in this

case, if only to ascertain whether the ascribed religious-based reason was in fact the reason for the discharge." Id. We hold similarly that the CHRO investigation may not be forestalled at this point in the proceeding simply because first amendment issues may later be raised if the outcome of the investigatory process is adverse to the defendants.

In this § 46a-88 proceeding it is possible that the defendants may have a cognizable religious reason as well as other grounds for objecting to some of the interrogatories that have been propounded.[6] No such grounds for refusal to answer have yet been presented, nor are they so readily apparent from an examination of the questions that we should now attempt to resolve their propriety. The only issue before us at this time is whether the trial court should have dismissed the petition and we conclude that it erred in doing so.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to deny the motion to dismiss and for further proceedings.

In this opinion the other justices concurred.

---

[6] Although the motion to dismiss was filed only on behalf of the named defendant, the memorandum of decision as well as the judgment file appears to have granted the motion in respect to both defendants. The parties on appeal have made no point of this irregularity and, in view of the result we reach, it is of no significance.