[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Attorney General of Connecticut (the defendant), hereinafter Attorney General, pursuant to information provided his office, caused various subpoena duces tecum requesting various documents to be served upon the following entities (and in some instances their respective banking institutions): The Court Sheriff's Department Community Charities Association, Inc., Edward B. Glanz, President; Deputy Sheriff of Fairfield County George F. Hammel; Deputy Sheriff of Fairfield County Ronald Z. Kadar; Richard Moccia; Deputy Sheriff of New Haven County William J. Nolan; Sheriff of Tolland County Michael Piccoli and Chief Deputy Sheriff of Tolland County Sharon Uhlman; Deputy Sheriff Mark Pesiri; Patricia Randall; Sheriff of Fairfield County Charles Valentino, Sr.; Sheriff of Windham County Thomas W. White and Chief Deputy Sheriff of Windham County Frank A. Zak, Jr.; all hereinafter referred to as the Plaintiffs.
The cases come before this count in Complaints to Quash Subpoenas filed by the various named plaintiffs against the Attorney General as defendant. CT Page 10443-a
The Attorney General is engaged in an ongoing investigation and claims authority for the issuance of the subpoena pursuant to the investigatory powers provided in Conn. General Statutes § 4-61dd.[1] This subject statute has been identified in the vernacular as the "whistleblower" statute.
The plaintiffs filed suit in the Superior Courts throughout the state seeking an order quashing the subpoenas. The Honorable Judge Robert C. Leuba, then Chief Court Administrator, ordered the cases consolidated, and said cases were assigned to this court. During the pendency of these actions a constitutional amendment was passed which abolished the office of High Sheriff. Conn. Const., amend. art. XXX., Sec. 1. On December 1, 2000 the county sheriff's functions were transferred to the Judicial Branch. General Statutes §§ 6-32d, 6-32f, 6-33. Although the change in our constitution mooted some of the outstanding subpoenas, there is still a live controversy concerning records and documents which may have been removed from the sheriff's offices prior to the transfer, as well as all the requested records and documents held by the deputy sheriffs, the sheriff association, the charity and the banks.
The plaintiffs have raised various claims as to why the subpoenas should be quashed. Based on the arguments of the parties, and a review of the relevant cases, this court determines that the complaints to quash the subpoenas are DENIED. The plaintiffs are ordered to comply with the outstanding subpoenas within twenty (20) days of the filing of this Memorandum of Decision.
This court does not intend to present an exhaustive history of the administrative power of investigation. For such an overview, the court will direct the interested party to the Administrative Law Treatise,
Third Edition, Davis and Pierce, Vol. I, § 4.1. (David and Pierce). A modest review of federal case law in this area would be helpful to our task. We must be mindful that the study of administrative law is a relatively new filed in our jurisprudence and brings with its study a different perspective as to the scope of judicial review. According to Davis and Pierce in the late nineteenth and early twentieth centuries, the Justices (of the U.S. Supreme Court) perceived governmental intervention as an evil to be tolerated only in unusual circumstances. They also acknowledged only a limited role for the national government. By 1940, the Court had internalized the prevailing political views of the electorate, as those views were revealed by Congress and the president. The Court accepted the concept of positive government and the potential for governmental intervention to produce desired results. It also CT Page 10443-b acquiesced in a much broader role for the national government. Once the Court accepted the possibility of beneficial positive government at the national level, it had no choice but to acquiesce in the exercise of broad investigatory powers by federal agencies.
The authors go on to state that the action taken in Fleming v.Montgomery Ward Co., 114 F.2d 384 (7th Cir.); cert. denied, 311 U.S. 690
(1940), where the U.S. Supreme Court denied certiorari after a lower court had rendered a holding that an agency may inspect books and records "regardless of whether the business is a public utility and regardless of whether there is any probable cause for believing there has been a violation of the law" Id, 390, is particularly noteworthy in that it marked a departure with pre-1940 decisions by declaring that "probable cause" need not be established prior to conducting an administrative investigation. Davis Pierce, supra, 138.
In 1943 the Secretary of Labor issued a subpoena for records relating to payrolls in certain plants of a company, under the Walsh-Healey Act, which provided that government contracts shall not be awarded to those who violate minimum-wage requirements. The company refused compliance with the subpoena and sought to have the district court determine, in the first instance, whether the Act and the contracts covered the employees and plants in question. Id., 139. The U.S. Supreme Court in EndicottJohnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943) held that the issue of coverage was for the Secretary to determine, not for the district court. The Court further held "the evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act, and it was the duty of the district court to order its production for the Secretary's consideration. id, 509.
In 1946 the U.S. Supreme Court in Oklahoma Press Publishing Co. v.Walling, 327 U.S. 186 (1946) made a similar ruling relevant to the Fair Labor Standards Act wherein Justice Rutledge wrote in relevant part:
 "The very purpose of the subpoena . . . is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so," Id., at 201.
In the words of Davis and Pierce, "the capstone of the revolutionary developments of the 1940's" came in United States v. Morton Salt Co.,338 U.S. 632 where the FTC in order to enforce a court order required a CT Page 10443-c "complete statement [of] prices, terms, and conditions of sale" after a designated date. The Supreme Court responded to the argument that the Commission was engaged in a "fishing expedition" by saying:
 "We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan "no fishing expeditions". It must not be forgotten that the administrative process and its agencies are relative new comers in the field of law and that it has taken and will continue to take experience and trial and error to fit this process into our system of judicature . . ." Id., 642.
 "The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have any exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurances that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." Id. 642-643.
 "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." Id. 653.
On the state level, the Connecticut Supreme Court clearly recognized CT Page 10443-d the necessity of the legislature having delegated certain powers to administrative agencies.
In Gentile v. Altermatt, 169 Conn. 267, our Supreme Court explained:
 "Individual rights and remedies must at times and of necessity give way to the interests and needs of society. If the law is to continue on the path of homogeneity to be the means of order in the complex social scheme of our growing populace, the legislature must be allowed to create alternate remedies for ills where the machinery of justice is so burdened that justice is, in fact, denied to many. We are in an age of the nascence of a new form of government. which might best be labeled an "administocracy" — rule by administrative agencies. Even the legislature branch of government, both state and federal, must so delegate many of its tasks or fail to provide the people all that their government should. Id., 308. Emphasis added.
Although the majority of the precedents with respect to administrative investigatory powers arise under federal law, a number of decisions in the Connecticut courts have adopted the federal rules as our own. SeeShulansky v. Rodriguez, 235 Conn. 465, 669 A.2d 560 (1995); Heslin v.Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 461 A.2d 938
(1983); In re Application of Ajello v. Moffie, 179 Conn. 324, 426 A.2d 295
(1979); see also United States v. Morton Salt Co., 338 U.S. 632,70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Publishing Co. v.Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946).
This brings us to the modern day in Connecticut where our Connecticut Supreme Court has reaffirmed the proposition that "applicable precedents vest substantial discretion in the administrative agency to engage in pretrial discovery to gather evidence in advance of the filing of specific charges. Unless the administrative inquiry is plainly irrelevant, a party resisting compliance with an investigatory subpoena may not challenge the applicability of the regulatory statute to the conduct under investigation." Shulansky v. Rodriguez, 235 Conn. 465, 669 A.2d 560
(1995).
 I.
The Plaintiff's first claim is that the sheriffs/deputy sheriffs do not CT Page 10443-e come within the purview of § 4-61dd, and therefore the Attorney General is not authorized to investigate the plaintiffs. It is a maxim of administrative law that the determination of coverage of an administrative statute is determined by the agency empowered to enforce it in the first instance. Bell Atlantic Mobile, Inc. v. Department ofPublic Utility Control, 253 Conn. 453, 754 A.2d 128 (2000); Shulansky v.Rodriguez, supra, 235 Conn. 467.
Both state and federal courts reviewing investigatory subpoenas in the context of enforcement proceedings have traditionally refused to adjudicate questions of coverage; that is, whether activities under investigation are subject to regulation by the administrative body conducting the investigation. Heslin v. Connecticut Law Clinic ofTrantolo Trantolo, 190 Conn. 510, 514-15, 461 A.2d 938 (1983); In reApplication of Ajello v. Moffie, 179 Conn. 324, 426 A.2d 295 (1979).Shulansky v. Cambridge-Newport Financial Services Corporation,42 Conn. Sup. 439, 441 (1992).
In the case of In re Application of Ajello v. Moffie, supra, 326, which involved a proceeding initiated by the Attorney General to enforce an investigative subpoena based on suspected violations of the Connecticut Anti-Trust Act, the Supreme Court held: "While courts which enforce such subpoenas may inquire into most questions of legality, they may not inquire into questions concerning the coverage or even the probable coverage of the statute under which the Attorney General is acting." InHeslin v. Connecticut Law Clinic of Trantolo Trantolo, supra, 514, the Supreme Court explained that the aforementioned holding in Moffie was based on the court's recognition that the legislature, when it endows an administrative body with responsibility for a statute's enforcement, may authorize that body, rather than the trial court, to determine the question of coverage in the preliminary investigation of possible violations. The Supreme Court further stated where an administrative body has been authorized by the legislature to enforce a statute the body may "develop, without interference or delay, a factual basis for the determination of whether particular activities come within its regulatory authority. Securities Exchange, Commission v. Brigadoon ScotchDistributing Co., 480 F.2d 1047, 1052-53 (2d Cir. 1973)." Heslin v.Connecticut Law Clinic of Trantolo Trantolo, supra, 514-515. Shulanskyv. Cambridge-Newport Financial, supra, 442.
In Securities Exchange Commission v. Wall Street TranscriptCorporation, 422 F.2d 1371, 1375 (2d Cir.), cert. denied, 398 U.S. 598,90 S.Ct. 2170, 26 L.Ed.2d 542 (1970), the Second Circuit Court of Appeals CT Page 10443-f stated: "It has long been established that the question of the inclusion of a particular person or entity within the coverage of a regulatory statute is generally for initial determination by an agency, subject to review on direct appeal, rather than for a district court whose jurisdiction is invoked to enforce an administrative subpoena." Quoted inShulansky v. Cambridge-Newport FinanciaL, supra, 442.
It is clear from the aforementioned authorities that in cases to enforce investigative subpoenas, the initial determination of whether a particular person or entity comes within the coverage of a regulatory statute is made by the agency, not by the court. Id. The Attorney General's determination that the sheriffs are subject to the investigatory flashlight which § 4-61dd creates is entitled to substantial deference. Bell Atlantic Mobile, Inc., supra, 253 Conn. 469.
Notwithstanding the due deference referred to, this court finds that § 4-61dd does include the sheriffs and deputy sheriffs based on a plain language reading of the statute. When determining the meaning of a statute the first rule of construction requires the court to, if possible, look at the plain words, and their plain meaning, as used by the legislature. Peabody N.E., Inc. v. Department of Transportation,250 Conn. 105, 735 A.2d 782 (1999). If the words used have a plain meaning which is not ambiguous, the statute shall be construed according to that plain meaning. Sweetman v. State Elections EnforcementCommission, 249 Conn. 296, 732 A.2d 144 (1999). "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . . In order to ascertain the plain meaning of the word [department] it is appropriate to look to the dictionary definition." (Internal citations omitted, internal quotation marks omitted). Wrinn v. State, 234 Conn. 401, 405, 661 A.2d 1034
(1995). The dictionary definition of "department" is "a major administrative division of government" as defined in Mirriam Webster's Collegiate Dictionary, 10th Ed. (1999). The office of the sheriff is set out in Chapter 78 of the General Statutes. General Statutes also set out the responsibilities, duties and requirements of the office of the sheriff.
It is also important to note at the outset that the records sought by the Attorney General relate to the conduct of "public officials" as that term is defined in General Statute § 1-79 (k) (Rev. to 1999), engaged in public affairs. A number of the plaintiffs, specifically the deputy sheriffs have argued that the deputy sheriffs, engaged in service of process are strictly "private persons" engaged in a private business pursuit. This court is at a loss to understand how the official, CT Page 10443-g statutorily authorized activities of deputy sheriffs, people appointed by an elected official, could in any way be construed to be "private". The Attorney General's determination that the sheriffs are subject to the investigatory flashlight which § 4-61dd creates is entitled to substantial deference. Bell Atlantic Mobile, Inc., supra, 253 Conn. 469. This is neither the time nor the procedure for the Superior Court to determine who is included within the purview of the subject statute.
It would be a anachronism for a statute whose purpose is to root out waste and corruption in government to not reach the various constitutional officers of the state as the plaintiffs have proposed in argument. The office of the sheriff was created by our Connecticut Constitution. Conn. Const. art. IV., § 25. The general statutes of our state set out the responsibilities of the sheriffs in carrying out their function. General Statutes (rev. to 1999) §§ 6-29 through 6-48.
Additional support for the proposition that "state department or agency" includes the sheriff and their deputies can be found by looking at other statutes which in fact define those terms.
For example, in CGS § 4-141[1] "the legislature's definition of "state agency" includes every department, division, board, office, commission, arm, agency and institution of the state government, whatever its title or function. This court finds that in using the word "state department or agency" within § 4-61dd, to define who could be investigated, the legislature intended for the sheriffs and deputy sheriffs to be included within the purview of the "whistleblower" statute.
 II
The second claim of the plaintiffs is that § 4-61dd has criminal implications and the statute fails to provide minimal protection of the plaintiff's constitutional rights, therefore the statute must be declared unconstitutional. As a threshold matter, the proponent of an attack on the constitutionality of a statute has a very high burden. Ramos v. Townof Vernon, 254 Conn. 799, 761 A.2d 705 (2000). "[All] legislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Citations omitted, internal quotation marks omitted.) City Recycling Inc. v. State, 247 Conn. 751, 725 A.2d 937
(1999). It is a settled rule of constitutional adjudication that a court will decide the constitutionality of a statute only as it applies to the CT Page 10443-h particular facts at hand. Id, 758.
The plaintiffs have raised three claims in their attack on the constitutionality of the statute:
 First, that the plaintiff's rights to due process are violated when a statute with criminal implications does not provide the person charged with proper constitutional safeguards.
 Second, that the probable cause requirement of the fourth amendment to the U.S. Constitution is circumscribed by § 4-61dd.
 Finally, the subpoenas under the statute require the plaintiffs to produce documents, the production of which may have some self incrimination effect, in violation of the fifth amendment to the U.S. Constitution, yet the statute fails to establish a mechanism for immunity from prosecution upon production.
 A
The plaintiffs in this case have raised a facial challenge to the constitutionality of § 4-61dd, essentially on due process grounds. They reason that since the investigation being carried out may result in a referral to the office of the chief state's attorney, then all the protections afforded criminal defendants apply, and the lack of those protections makes the statute unconstitutional. The problem with this construction is that it ignores both the purpose behind the statute, evident in its language, and the other directions given to the Attorney General upon completion of the investigation. "Care must be taken to effectuate all provisions of [a] statute" Willoughby v. City of NewHaven, 254 Conn. 404, 757 A.2d 1083 (2000). "[T]he fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." (Citations omitted, internal quotation marks omitted) Ramos v. Town of Vernon,supra, 254 Conn. 834.
The requirement that the Attorney General forward information to the Chief State's Attorney if warranted does not make § 4-61dd a criminal statute. Generally, whether a statute is construed to be criminal or not, in the classic definition, hinges on whether or not the statute CT Page 10443-i imposes a punishment for an offense against the state. Plumb v. Griffin,74 Conn. 132, 134, 50 A. 1 (1901). No punishment is enumerated in §4-61dd, in fact, the only corrective action which is contained within the statute is one of reporting. General Statutes § 4-61dd. Under our jurisprudence, the possibility that the operation of a statute may result in a criminal prosecution without proper due process protections, is insufficient to find that statute facially unconstitutional absent a showing that all circumstances in which the statute is used would result in criminal prosecutions without the attendant due process. Shawmut BankNA v. Valley Farms, 222 Conn. 361, 610 A.2d 652 (1992). The plaintiffs have not been subjected to criminal prosecution as a result of the §4-61dd investigation. Furthermore, the plaintiffs have not shown to the court how all investigations undertaken by the Attorney General pursuant to § 4-61dd would result in criminal prosecutions without the protections of due process. This court will not address the facial unconstitutionality of the statute under these facts.
 B
The plaintiffs have also raised a challenge to the operation of §4-61dd as violative of the 4th Amendment to the federal charter prohibitions against searches and seizures without probable cause. They argue that § 4-61dd allows the Attorney General to "constructively" search their records and documents, without a determination by a detached judicial authority that the search is justified based on a finding that there is probable cause to think that the plaintiffs have committed some action which § 4-61dd addresses. The protections of a finding of probable cause, supported by oath or affirmation, simply do not apply in the context of an administrative/investigatory subpoena. Oklahoma PressPublishing Co. v. Walling, supra, 327 U.S. 209. All that is needed is a finding by the agency, empowered by law, that the investigation is authorized and that the information sought is reasonably relevant to the inquiry. CHRO v. Archdiocesan School Office, 202 Conn. 601, 522 A.2d 781
(1987). The Attorney General has authority under § 4-61dd to subpoena the information sought. There have been affirmations by counsel that the documents relate to the ongoing investigation of mismanagement of the office of the sheriffs. The standards set by the United States Supreme Court have been met. The failure of the statute to require a finding of probable cause before allowing the Attorney General to subpoena the plaintiff's records does not violate the fourth amendment to the U.S. Constitution under these circumstances.
 C
Although the plaintiff's facial constitutional claims have failed, the CT Page 10443-j protections of the fifth amendment may be implicated whenever there is a risk that what is said exposes the speaker to criminal liability. Statev. Biller, 190 Conn. 594, 462 A.2d 987 (1983). The plaintiff's claim that the documents subpoenaed may expose them to criminal liability and therefore have invoked the protections of fifth amendment to the U.S. Constitution. The fifth amendment protection against self incrimination applies in both the criminal and civil context. id, 600. The general rule concerning the fifth amendment, is that it will only protect individuals against being required to give testimony. Lieberman v. Reliable RefuseCo., 212 Conn. 661, 668, 563 A.2d 1013 (1989). Through a string of cases, starting with Oklahoma Press, supra, in 1946 to U.S. v. Hubbell,530 U.S. 27, 1200 S.Ct. 2037, 147 L.Ed.2d 24 in 2000, the United States Supreme Court has narrowed the historical applicability of thefifth amendment of both entities and individuals. The court, in OklahomaPress, supra, found the fifth amendment not to apply to corporations or their officers. Oklahoma Press Publishing Co. v. Walling, supra327 U.S. 208. The court further narrowed the protection of thefifth amendment when it explained that in the context of the production of papers, when the compulsion to create the papers is not present, thefifth amendment would not be implicated ever with respect to the content of papers which were not required to be prepared. Only in the sense that theproduction of the papers may have an inculpatory use, would thefifth amendment apply, and then, only to a private individual as to the individuals papers. United States v. Hubbell, supra. This is the legal backdrop upon which the plaintiffs have made their claims.
The first class of plaintiffs whose claims must fail would be the sheriffs, with respect to the papers of the offices of the sheriff's. Production of papers of an entity are not protected from production by the fifth amendment to the U.S. Constitution. Braswell v. United States,487 U.S. 99, 109, 108 S.Ct 2284, 101 L.Ed.2d 98 (1988). The subpoenas in question have demanded the plaintiffs to produce many documents in their possession which relate to their duties as sheriffs. The sheriffs were constitutional officers of the state, and papers related to the sheriff's duties are papers of those public entities. The claims of the sheriffs, as to the papers of the Offices of the Sheriffs, must therefore fail.
A number of the plaintiffs are organizations. The fifth amendment right to avoid self incrimination does not immunize either the organization, or the persons who speak on behalf of that legal entity. Lieberman v.Reliable Refuse Co., supra, 212 Conn. 668; State v. Biller, supra,190 Conn. 601. Therefore the claims made by the various plaintiffs that are entities must fail. CT Page 10443-k
A number of the plaintiffs are organizations. The fifth amendment right to avoid self incrimination does not immunize either the organization, or the persons who speak on behalf of that legal entity. Lieberman v.Reliable Refuse Co., supra, 212 Conn. 668; State v. Biller, supra,190 Conn. 601. Therefore the claims made by the various plaintiffs that are entities must fail.
The plaintiffs have also claimed fifth amendment protections concerning the papers sought from the various banks named in the subpoenas. "The privilege against self-incrimination is not violated by the enforcement of a subpoena to obtain documents of an accused in the possession of a third party to whom the subpoena is directed." State v. Iasevoli, 188 Conn. 325,334, 449 A.2d 996 (1982); Fisher v. United States, 425 U.S. 391, 397,96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Therefore the plaintiff's claims with respect to these documents must fail as well.
The only parties for whom there may be a possible fifth amendment privilege are those sheriffs and deputy sheriffs who were served subpoenas concerning their own private records. If properly raised, by individuals related to their individual papers, the protections of thefifth amendment would allow an avoidance of the compulsion to produce their papers unless the individuals were protected from prosecution related to the documents production. United States v. Hubbell, supra, 530 U.S. 38. These remaining individual plaintiffs make the claim that the subpoenas demand production of papers which are personal, and therefore they can avoid compliance by invoking the fifth amendment. The problem with the plaintiffs claims with respect to the fifth amendment is that they have raised a blanket invocation. In order for the fifth amendment to protect someone from compulsion to produce documents, that individual "must claim the privilege as to each specific question asked of him and as to each, before he would be justified in refusing to answer, it must appear that there was reasonable ground to apprehend from it some real danger of incrimination." (Internal quotation marks omitted.) State v. O'Brien,29 Conn. App. 724, 618 A.2d 50 (1992); McCarthy v. Clancy, 110 Conn. 482,148 A. 551 (1930). This court has afforded the plaintiff's months[2]
to provide it with some particularized showing as to which of the requests in the subpoenas they wish to invoke the fifth amendment. After all this time all but one of the plaintiffs have failed to properly give this court "reasonable ground to apprehend from [the request] some real danger of incrimination." McCarthy v. Clancy, supra, 110 Conn. 490. The plaintiff[3] who has submitted to the court a particularized showing concerning the fifth amendment has articulated items related to his status as a "serving officer" and not as related to his own personal CT Page 10443-l papers. As previously stated, documents related to the official public status of a person are not protected by the fifth amendment. Without a proper showing, this court refuses to allow the plaintiffs to invoke thefifth amendment as to the records subject to these subpoenas.
The plaintiff's final argument directed at the constitutionality of § 4-61dd is likewise related to the fifth amendment claim. The plaintiffs argue that a statute which compels production of incriminating information must have an immunity component. They argue that the failure of the statute to allow for a grant of immunity prior to being compelled to produce the information makes the statute itself unconstitutional. It is true that a producer of incriminating material must be granted immunity prior to being compelled to testify. Kastigar v. United States,406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). "A witness likewise may not rightfully refuse to answer questions when he is protected at least against the use of his compelled answers and any evidence derived therefrom in any subsequent criminal case in which he is a defendant." (Internal quotations marks omitted) State v. Roma, 199 Conn. 110,505 A.2d 717 (1986). However, the absence of a provision for immunity will not invalidate a statute as long as the privilege to remain free of compulsion is available. State v. Roma, supra 199 Conn. 115; Kastigar v.United States, supra, 406 U.S. 448. The argument lacks merit because it ignores the ability of the judge in the first instance to uphold an assertion of the fifth amendment upon proper application. Compulsion without immunity is what is constitutionally prohibited, that situation has not presented itself to this court.
Therefore the facial attacks on the constitutionality of the statute must fail.
 III
The Plaintiffs' third claim is that there exists an irreconcilable conflict between § 4-61dd which gives the Attorney General the authority to investigate, and Conn. Const. Art. IV, § 27; General Statute § 51-276[3] and General Statute § 3-125,[4] which set out the powers and authority for both the state's attorneys and the attorney general. The argument the plaintiff's pose is that since theremay be criminal implications resulting from the investigations, allowing the Attorney General to do the investigation is an impermissible infringement on the power of the state's attorneys.
General Statutes § 51-276 provides as follows: "There is hereby established the Division of Criminal Justice within the executive CT Page 10443-m department, which shall be in charge of the investigation and prosecution of all criminal matters in the Superior Court. The Division of Criminal Justice shall be an agency within the executive department with all management rights except appointment of all state's attorneys." General Statute § 51-276.
Article IV, sec. 27 of the Connecticut Constitution establishes the division of criminal justice within the executive department, mirroring the language of C.G.S. § 51-276 which provides in part: "There is hereby established the Division of Criminal Justice within the executive department, which shall be in charge of the investigation and prosecution of all criminal matters in the Superior Court." Conn. Const. Art IV, § 27. In contrast to that section, General Statute § 3-125
provides, in pertinent part: "Attorney General shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction." General Statute § 3-125. Finally § 4-61dd in part directs the Attorney General to "where necessary, report his findings . . . in matters involving criminal activity, to the chief state's attorney." The crux of the plaintiff's argument is that since it is possible that a criminal prosecution may arise out of the investigation conducted by the Attorney General, that investigation should be considered an "investigation . . . of [a] criminal matter" which ArticleIV, sec. 27 of the Connecticut Constitution and § 51-276 require be conducted by the division of criminal justice. The plaintiff's argue that by conducting the investigation under § 4-61dd, the Attorney General is improperly invading a realm which has been assigned to another department of the state.
When determining what the legislature intends when it enacts legislation, the court is guided by a number of rules of statutory construction. One of the many rules is that the legislature is presumed to have acted properly, and "[t]here is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law." Cagiva North America v. Schenk, 239 Conn. 1, 8,680 A.2d 964 (1996). It is improper to attempt to ascertain what a statute means by looking at only portions of the enactment in the abstract. Sweetman v. State Elections Enforcement Commission,249 Conn. 296, 732 A.2d 144, (1999). When read as whole, it becomes apparent that the Attorney General in fulfilling the actions required by § 4-61dd will not be directed to conduct a criminal investigation, acting outside the scope of the Attorney General's role as set forth in the statutes, or within the role of the state's attorney either. The CT Page 10443-n plain language in fact leads one to the opposite conclusion, that should the Attorney General uncover what it believes to be criminal conduct, he shall "where necessary, report his findings . . . in matters involving criminal activity, to the chief state's attorney." An inclusive read of the statute leads to the conclusion, contrary to the plaintiff's argument, that not only does the statute not direct the Attorney General to conduct a criminal investigation, an area properly within the purview of the prosecuting authority, but instead directs the Attorney General to refer those matters where they properly belong. Although it is possible to read § 4-61dd as authorizing the Attorney General to conduct what may become a criminal investigation, that is not the result most likely to be arrived at. id, 307. As an aside, nowhere does the possibility of conflict arise to the level of separation of powers conflict which was discussed and disposed of in Massameno v. Statewide Grievance Committee,234 Conn. 539, 663 A.2d 317 (1995). The issue resolved in Massameno was a purported conflict between the different branches of government, related to the judicial branch's supervisory role of state's attorneys, members of the executive branch of government. The plaintiff in that case, Assistant State's Attorney John Massameno, argued that the judicial branch should not be allowed to impede the operation of the core function of the state's attorney by imposing judicially administered discipline. The Connecticut Supreme Court, in upholding the judicial branch's ability to discipline state's attorneys, held that some governmental functions will by necessity overlap, requiring complete and total division amongst all the departments, "would result in the paralysis of government." id,
568. The purported conflict created by § 4-61dd does not implicate separate branches of government, but instead two departments within the executive branch. This court does not construe the power granted to the Attorney General under § 4-61dd as an impermissible intrusion upon the powers granted to another department of government.
 IV
The final issue raised by the Plaintiffs in support of their complaint to quash the subpoenas is that the subpoenas terms are unreasonable, oppressive and burdensome with respect to the volume and scope of documents sought to be produced. The volume and scope arguments will be treated separately.
The volume of the documents, in terms of the cost of production, has been addressed by the parties, the Attorney General agreeing to resolve issues concerning the cost of production of the requested documents if and when that issue arises. Because the parties have agreed to attempt to work out this issue, this court will not address it in the context of CT Page 10443-o whether to quash the various subpoenas.
The determination of breadth of scope of an investigatory subpoena is to be determined in the first instance by the agency serving the subpoena. Shulansky v. Rodriguez, supra, 235 Conn. 467. The scope of an investigatory subpoena will survive judicial review as long as the agency seeking the information has the authority to request the documents, the demands are not too indefinite, the information is reasonably relevant and the information is being sought for a proper investigatory purpose.id.
The plaintiffs have not attempted to explain to this court how the subpoenas violate the rule set out in Shulansky, instead they have simply stated that the subpoenas are overbroad, and amount to a rummaging through the private papers of the plaintiffs. Even were this to be so, in the administrative investigatory context, as long as the information sought is "not plainly irrelevant" the courts have vested substantial discretion in administrative agencies conducting statutorily authorized investigations. id. The authority of the Attorney General to conduct the investigation has been previously discussed in this memorandum. The subpoenas have not requested the plaintiffs to produce all of their documents "forever" but have limited the inquiry to the specific time frame being investigated. The classes of documents sought have also been particularized. After a reading of the various subpoenas, and considering the argument by both the plaintiffs and the defense, this court finds the information sought by the Attorney General to be reasonably relevant to the investigation being conducted by the Attorney General.
The plaintiffs have also argued that the subpoenas should be quashed because production of the information would be "unduly burdensome" on the various plaintiffs. The test of whether something is "unduly burdensome" is rather elusive. In Shulansky, the Supreme Court adopted the trial court's view interpreting "unduly burdensome" as relating to how difficult it would be for the subpoenaed party to comply. Shulansky v.Rodriguez, supra, 235 Conn. 467, (adopting in full the analysis of the trial court in Shulansky v. Rodriguez, 44 Conn. Sup. 72, 669 A.2d 638
(1994)). The dictionary definition of "unduly burdensome" would be that which is "excessively oppressive." Merriam-Webster's CollegiateDictionary, Tenth Ed. 1999. The information which the Attorney General is seeking the plaintiffs to produce relates to their profession as sheriffs and deputy sheriffs. The majority of the information is related to the finances of these plaintiffs during the period of January 1, 1997 "through the present. . . ." The types of information sought would have been used by the plaintiffs and already compiled in order to comply with CT Page 10443-p Internal Revenue Service requirements, Department of Revenue Service requirements, and statutory reporting requirements for sheriffs. Although it may be a burden for the plaintiffs to comply, it is this courts opinion that the burden is not excessive. This court finds that based on the limited period of time in question, and the nature of the documents sought, the Attorney General's requests are not "unduly burdensome" to the plaintiffs.
The final test under Shulansky is that the investigation not be conducted for an improper purpose. id. Although allegations have been made by the plaintiffs that the investigation is being conducted solely to persecute the sheriffs for the political gain of the Attorney General, this court finds those allegations to be without merit.
THEREFORE, for the forgoing reasons, the plaintiffs complaint to quash subpoenas are DENIED. The plaintiffs are hereby ORDERED to produce all documents responsive to the Attorney General's subpoena within twenty (20) days of this Order. This Memorandum of Decision filed in July 31, 2001, compliance is ordered within 20 days of this filing. Accordingly; compliance is ordered by August 21, 2001.
Miano, J.
[1] General Statutes § 4-61dd:
 Sec. 4-61dd. Disclosure of information to Auditors of Public Accounts.
Investigation by Attorney General. Report to General Assembly.
 (a) Any person having knowledge of any matter involving corruption, unethical practices, violation of state laws or regulations, mismanagement, gross waste of funds, abuse of authority or danger to the public safety occurring in any state department or agency or any quasi-public agency, as defined in section 1-120, or any person having knowledge of any matter involving corruption, violation of state or federal laws or regulations, gross waste of funds, abuse of authority or danger to the public safety occurring in any large state contract, may transmit all facts and information in his possession concerning such matter to the Auditors of Public Accounts. The Auditors of Public Accounts shall review such matter CT Page 10443-q and report their findings and any recommendations to the Attorney General. Upon receiving such a report, the Attorney General shall make such investigation as he deems proper. At the request of the Attorney General or on their own initiative, the auditors shall assist in the investigation. The Attorney General shall have power to summon witnesses, require the production of any necessary books, papers or other documents and administer oaths to witnesses, where necessary, for the purpose of investigation. Upon the conclusion of his investigation, the Attorney General shall where necessary, report his findings to the Governor, or in matters involving criminal activity, to the Chief State's Attorney. The Auditors of Public Accounts and the Attorney General shall not, after receipt of any information from a person under the provisions of this section, disclose the identity of such person without his consent unless the Auditors of Public Accounts or the Attorney General determine that such disclosure is unavoidable during the course of the investigation.
 (b) No state officer or employee, as defined in section 4-141, no quasi-public agency officer or employee, no officer or employee of a large state contractor and no appointing authority shall take or threaten to take any personnel action against any state or quasi-public agency employee or any employee of a large state contractor in retaliation for such employee's disclosure of information to the Auditors of Public Accounts or the Attorney General under the provisions of this section. A state or quasi-public agency employee alleging that such action has been threatened or taken may file an appeal within thirty days of knowledge of the specific incident giving rise to such claim with the Employees' Review Board under section 5-202, or, in the case of a state or quasi-public agency employee covered by a collective bargaining contract, in accordance with the procedure provided by such contract. An employee of a large state contractor alleging that such action has been threatened or taken may, after exhausting all available administrative remedies, bring a civil action in accordance with the provisions of subsection CT Page 10443-r (c) of section 31-51m.
 (c) Any employee of a state or quasi-public agency or large state contractor, who is found to have knowingly and maliciously made false charges under subsection (a) of this section shall be subject to disciplinary action by his appointing authority up to and including dismissal. In the case of a state or quasi-public agency employee, such action shall be subject to appeal to the Employees' Review Board in accordance with section 5-202, or in the case of state or quasi-public agency employees included in collective bargaining contracts, the procedure provided by such contracts.
 (d) On or before September first, annually, the Auditors of Public Accounts shall submit to the clerk of each house of the General Assembly a report indicating the number of matters for which facts and information were transmitted to the auditors pursuant to this section during the preceding state fiscal year and the disposition of each such matter.
 (e) Each contract between a state or quasi-public agency and a large state contractor shall provide that, if an officer, employee or appointing authority of a large state contractor takes or threatens to take any personnel action against any employee of the contractor in retaliation for such employee's disclosure of information to the Auditors of Public Accounts or the Attorney General under the provisions of this section, the contractor shall be liable for a civil penalty of not more than five thousand dollars for each offense, up to a maximum of twenty per cent of the value of the contract. Each violation shall be a separate and distinct offense and in the case of a continuing violation each calendar day's continuance of the violation shall be deemed to be a separate and distinct offense. The executive head of the state or quasi-public agency may request the Attorney General to bring a civil action in the superior court for the judicial district of Hartford to seek imposition and recovery of such civil penalty. CT Page 10443-s
 (f) Each large state contractor shall post a notice of the provisions of this section relating to large state contractors in a conspicuous place which is readily available for viewing by the employees of the contractor.
(g) As used in this section:
 (1) "Large state contract" means a contract between an entity and a state or quasi-public agency, having a value of five million dollars or more, except for a contract for the construction, alteration or repair of any public building or public work; and
 (2) "Large state contractor" means an entity that has entered into a large state contract with a state or quasi-public agency.
[2] Sec. 35-42. Subpoena power. Written interrogatories. Civil penalties. Federal and interstate cooperation.
 (a) Whenever the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, has reason to believe that any person has violated any of the provisions of this chapter, he may, prior to instituting any action or proceeding against such person, issue in writing and cause to be served upon any person, by subpoena duces tecum, a demand requiring such person to submit to him documentary material relevant to the scope of the alleged violation.
 (b) Such demand shall (1) state the nature of the alleged violation, and (2) describe the class or classes of documentary material to be reproduced thereunder with such definiteness and certainty as to be accurately identified, and (3) prescribe a date which would allow a reasonable time to assemble such documents for compliance.
 (c) All documents furnished to the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, shall be held in CT Page 10443-t the custody of the Attorney General, or his designee, shall not be available to the public, and shall be returned to the person at the termination of the attorney general's investigation or final determination of any action or proceeding commenced thereunder.
 (d) No such demand shall require the submission of any documentary material, the contents of which would be privileged, or precluded from disclosure if demanded in a grand jury investigation.
 (e) The Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may during the course of an investigation of any violations of the provisions of this chapter by any person (1) issue in writing and cause to be served upon any person, by subpoena, a demand that such person appear before him and give testimony as to any matters relevant to the scope of the alleged violations. Such appearance shall be under oath and a written transcript made of the same, a copy of which shall be furnished to said person appearing, and shall not be available for public disclosure; and (2) issue written interrogatories prescribing a return date which would allow a reasonable time to respond, which responses shall be under oath and shall not be available for public disclosure.
 (f) In the event any person shall fail to comply with the provisions of this section, (1) the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may apply to the superior court for the judicial district of Hartford for compliance, which court may, upon notice to such person, issue an order requiring such compliance, which shall be served upon such person; (2) the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may also apply to the superior court for the judicial district of Hartford for an order, which court may, after notice to such person and hearing thereon, issue an order requiring the payment of civil penalties to the state in an amount not to exceed five hundred CT Page 10443-u dollars.
 (g) The Attorney General shall cooperate with officials of the federal government and the several states, including but not limited to the sharing and disclosure of information and evidence obtained under the purview of this chapter.
 (h) Service of subpoenas ad testificandum, subpoenas duces tecum, notices of deposition, and written interrogatories, as provided herein, may be made by: (1) Personal service or service at the usual place of abode; or (2) by registered or certified mail, return receipt requested, a duly executed copy thereof addressed to the person to be served at his principal place of business in this state, or, if said person has no principal place of business in this state, to his principal office, or to his residence.
[3] Sec. 51-276. Division established.
 There is hereby established the Division of Criminal Justice within the executive department, which shall be in charge of the investigation and prosecution of all criminal matters in the Superior Court.
 The Division of Criminal Justice shall be an agency within the executive department with all management rights except appointment of all state's attorneys.
[4] Sec. 3-125. Duties of Attorney General; deputy; assistants; associate attorneys general.
 The Attorney General shall appoint a deputy, who shall be sworn to the faithful discharge of his duties and shall perform all the duties of the Attorney General in case of his sickness or absence.
 He shall appoint such other assistants as he deems necessary, subject to the approval of the Governor. The Attorney General may also appoint not more than four associate attorneys general who will serve at the CT Page 10443-v pleasure of the Attorney General and will be exempt from the classified service. The Attorney General shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction. He shall appear for the state, the Governor, the Lieutenant Governor, the Secretary, the Treasurer and the Comptroller, and for all heads of departments and state boards, commissioners, agents, inspectors, committees, auditors, chemists, directors, harbor masters, and institutions and for the State Librarian in all suits and other civil proceedings, except upon criminal recognizances and bail bonds, in which the state is a party or is interested, or in which the official acts and doings of said officers are called in question, and for all members of the state House of Representatives and the state Senate in all suits and other civil proceedings brought against them involving their official acts and doings in the discharge of their duties as legislators, in any court or other tribunal, as the duties of his office require; and all such suits shall be conducted by him or under his direction. When any measure affecting the State Treasury is pending before any committee of the General Assembly, such committee shall give him reasonable notice of the pendency of such measure, and he shall appear and take such action as he deems to be for the best interests of the state, and he shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. All legal services required by such officers and boards in matters relating to their official duties shall be performed by the Attorney General or under his direction. All writs, summonses or other processes served upon such officers and legislators shall, forthwith, be transmitted by them to the Attorney General. All suits or other proceedings by such officers shall be brought by the Attorney General or under his direction. He shall, when required by either house of the General Assembly or when requested by the president pro tempore of the Senate, the speaker of the House of Representatives, or the majority leader or the minority leader of the Senate or House of CT Page 10443-w Representatives, give his opinion upon questions of law submitted to him by either of said houses or any of said leaders. He shall advise or give his opinion to the head of any executive department or any state board or commission upon any question of law submitted to him. He may procure such assistance as he may require. Whenever a trustee, under the provisions of any charitable trust described in section 45a-514, is required by statute to give a bond for the performance of his duties as trustee, the Attorney General may cause a petition to be lodged with the probate court of the district in which such trust property is situated, or where any of the trustees reside, for the fixing, accepting and approving of a bond to the state, conditioned for the proper discharge of the duties of such trust, which bond shall be filed in the office of such probate court. The Attorney General shall prepare a topical and chronological cross-index of all legal opinions issued by the office of the Attorney General and shall, from time to time, update the same.
[5] The plaintiffs were to have filed any briefs concerning the articulation of any fifth amendment self-incrimination claims on or before March 7, 2001, with the AG filing any response on or before March 21, 2001. The attorney of record, for three of the plaintiffs, Arthur Meisler, died on or about March 23, 2001. At no time did this court receive any request for an extension of time in which to file the articulation from either Attorney Meisler, or any subsequent counsel for these plaintiffs.
* * * * * * * *
It is not the place of the court to inquire into questions concerning coverage, or probable coverage of the statute under which the Attorney General is acting. In re Application of Ajello v. Moffie, supra,179 Conn. 326. The AG's determination that the sheriffs are subject to the investigatory flashlight which § 4-61dd creates is entitled to substantial deference. Bell Atlantic Mobile, Inc., supra, 253 Conn. 469. This is not the time or the manner for the Superior Court to determine who is included within the Whistleblower umbrella. Notwithstanding the above outlined rule, this court finds that § 4-61dd does include the sheriffs and deputy sheriffs based on a plain language reading of the statute. When determining the meaning of a statute the first rule of CT Page 10443-x construction requires the court to ascertain the meaning of the statute, if possible, by looking at the plain words, and their plain meaning, as used by the legislature. Peabody N.E., Inc. v. Department ofTransportation, 250 Conn. 105, 735 A.2d 782 (1999). If the words used have a plain meaning which is not ambiguous, the statute shall be construed according to that plain meaning. Sweetman v. State ElectionsEnforcement Commission, 249 Conn. 296, 732 A.2d 144 (1999). "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . . In order to ascertain the plain meaning of the word [department] it is appropriate to look to the dictionary definition." (Internal citations omitted, internal quotation marks omitted) Wrinn v. State, 234 Conn. 401, 405,661 A.2d 1034 (1995). The dictionary definition of "department" is "a major administrative division of government" as defined in Mirriam Webster's Collegiate Dictionary, 10th Ed. (1999). The office of the sheriff is set out in the General Statutes, the General Statutes also set out the responsibilities, duties and requirements of the office of the sheriff. This court finds that in using the words "state department or agency" within § 4-61dd, to define who could be investigated, the legislature intended for the sheriffs and deputy sheriffs to be included within the purview of the "whistleblowers" statute.
Additional support for the proposition that "state department or agency" includes the sheriff and their deputies can be found by looking at other statutes which in fact define those terms.